GLENN D. POMERANTZ (State Bar No. 112503)
glenn.pomerantz@mto.com
ROSE LEDA EHLER (State Bar No. 296523)
rose.ehler@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
STEPHANIE GOLDFARB HERRERA (State Bar No. 313887)
stephanie.herrera@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC., et al. <br><br> Plaintiffs, <br><br> vs. <br><br> REDBOX AUTOMATED RETAIL, LLC, <br><br> Defendant. | Case No. 2:17-cv-08655-DDP (AGRx) <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge:  Hon. Dean D. Pregerson <br><br> Date:   January 22, 2018 <br> Time:   10:00 a.m. <br> Ctrm:   9C <br><br> Filed concurrently herewith: <br> (1)   Declaration of Janice Marinelli <br> (2)   Declaration of Kelly M. Klaus <br> (3)   Declaration of Rose Leda Ehler <br> (4)   [Proposed] Order <br><br> Trial Date:      None Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 22, 2018, at 10:00 a.m., before the Honorable Dean D. Pregerson, United States District Judge, in Courtroom 9C of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California, Plaintiffs Disney Enterprises, Inc., Buena Vista Home Entertainment, Inc., Lucasfilm Ltd. LLC, and MVL Film Finance LLC (collectively, "Disney"[1]) will and hereby do move for a preliminary injunction restraining Defendant Redbox Automated Retail, LLC ("Redbox") from selling Disney's digital movie codes ("Codes").

This Motion is  made on the following grounds as explained in the accompanying Memorandum of Points and Authorities and supporting papers:

1.     Disney is likely to succeed on the merits of its claims for relief: (a) Redbox breaches its contracts with Disney that prohibit the sale or transfer of Codes; (b) Redbox is liable under the doctrine of contributory copyright infringement for its knowing, material contribution to the infringement of Disney's exclusive reproduction right by customers who buy Codes from Redbox and then copy Disney's movies without authorization to do so; (c) Redbox tortiously interferes with the contractual relationships between Disney and its customers by inducing those customers to breach the RedeemDigitalMovie.com and Movies Anywhere terms of service; (d) Redbox misleads consumers into believing that Redbox is authorized to sell Codes and that consumers have authorization to redeem Codes purchased from Redbox to obtain downloads of movies, in violation of California's proscription on false advertising and fraudulent business practices, Cal. Bus. & Prof. Code §§ 17200, 17500; and (e) Redbox violates the unlawful prong of § 17200 through its false advertising and tortious interference with Disney's contractual relationships with its customers.

---

[1] Abbreviations introduced in this Notice of Motion and Motion are used in the accompanying Memorandum of Points and Authorities.

2.      Absent a preliminary injunction, Disney will continue to suffer immediate and irreparable harms that money damages cannot fully remedy.  The harms that Redbox's illegal conduct causes include damage to Disney's relationships, goodwill, and ability to negotiate with authorized licensees; economic harms that are difficult to quantify; harm to Disney's relationships with its customers, including consumer confusion about the legality of Redbox's offering; the loss of Disney's ability to control the distribution of its content; and irreparable damage to Disney's brand.

3.      The balance of equities tips sharply for Disney.

4.      The requested injunction is in the public interest.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Declarations of Janice Marinelli ("Marinelli Decl."), Kelly M. Klaus ("Klaus Decl."), Rose Leda Ehler ("Ehler Decl."), and Exhibits thereto; all documents on file in this action; and such further or additional evidence or argument as may be presented before or at the time of the hearing on this Motion.

This Motion is exempt from the pre-motion meet-and-confer requirements of Civil Local Rule 7-3.


DATED:  December 21, 2017          MUNGER, TOLLES & OLSON LLP




                                    By:  _____/s/ *Kelly M. Klaus*_____
                                         KELLY M. KLAUS
                                         Attorney for Plaintiffs

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND................................................................................2

    A.    Disney's Production And Distribution Of Movies ...............................2

    B.    Disney's Combo Packs And Codes ...................................................3

    C.    The Contract Governing The Purchase Of Combo Packs
          Expressly Bars The Sale Or Transfer Of Codes ...................................4

    D.    Redbox Recently Began Selling Digital Codes In Violation Of
          Disney's Contractual Terms And Rights ..............................................6

    E.    Redbox Causes Immediate And Irreparable Harm To Disney,
          Both Directly And Through Harming Its Licensees And
          Consumers..............................................................................................7

ARGUMENT .........................................................................................................8

I.    DISNEY IS LIKELY TO SUCCEED ON THE MERITS OF ITS
    CLAIMS .......................................................................................................9

    A.    Redbox Breaches The Combo Pack Purchase Contract By
          Selling Codes ........................................................................................9

          1.    Redbox Enters Into Binding Contracts With Disney When
              It Buys Combo Packs..................................................................9

          2.    Disney Performs Its Obligations Under The Contracts..............10

          3.    Redbox Breaches Its Contractual Obligations By Selling
              The Codes ...................................................................................10

          4.    Redbox's Breach Causes Disney To Suffer Damages ...............11

    B.    Redbox Knowingly Contributes To The Infringement Of
          Disney's Copyrights By Selling Codes ...............................................11

          1.    Redbox's Customers Infringe Disney's Exclusive Right
              To Copy Its Movies When They Use The Codes To
              Obtain Unauthorized Digital Downloads ...................................11

              a.    Disney Owns Or Controls Valid Copyrights In The
                  Works .................................................................................11

              b.    Redbox's Customers Who Use Codes To Obtain
                  Digital Downloads Infringe Disney's Right To
                  Copy Its Movies ................................................................12

-i-

**TABLE OF CONTENTS**
(continued)

Page

2. Redbox Knowingly And Materially Contributes To The Violation Of Disney's Exclusive Rights By Selling Unauthorized Codes ................................................................. 13

3. The First Sale Defense Is Inapplicable To The Violation Of Disney's Exclusive Right Of Reproduction ......................... 15

C. Redbox Induces Purchasers Of Codes To Breach Their Contracts With Disney And Thereby Is Liable For Tortious Interference .......... 16

D. Redbox's Deceptive Selling And Marketing Of The Codes Is Fraudulent And False Advertising Under Sections 17200 And 17500 Of The California Business & Professions Code ..................... 17

E. Redbox Engages In An Unlawful Business Practice In Violation Of Section 17200 Of The California Business & Professions Code By Committing False Advertising And Tortiously Interfering With Disney's Contracts With Its Customers ................... 18

II. ABSENT AN INJUNCTION, DISNEY WILL CONTINUE TO SUFFER IRREPARABLE HARM ............................................... 19

III. THE BALANCE OF HARDSHIPS TIPS DECISIVELY FOR DISNEY ........................................................................ 23

IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST .......... 23

V. MINIMAL SECURITY SHOULD BE REQUIRED .................................. 24

CONCLUSION ......................................................................... 25

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ........................................................................ 11, 12

*In re Aimster Copyright Litig.*,
  334 F.3d 643 (7th Cir. 2003) ................................................................................. 15

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) ............................................................................... 16

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
  534 F. App'x 633 (9th Cir. 2013) .......................................................................... 24

*Apple Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 943 (N.D. Cal. 2009) .................................................................. 23

*Arista Records LLC v. Lime Group LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011) ................................................................... 13

*Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l Inc.*,
  421 F.3d 981 (9th Cir. 2005) .................................................................... 9, 10, 18

*Capitol Records, LLC v. ReDigi Inc.*,
  934 F. Supp. 2d 640 (S.D.N.Y. 2013) ............................................................ 14, 15

*Corp. Relocation, Inc. v. Martin*,
  No. 3:06-CV-232-L, 2006 WL 4101944 (N.D. Tex. Sept. 12, 2006) ............ 23, 24

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
  479 F.3d 1099 (9th Cir. 2007) ............................................................................... 18

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) .................................................................. 19, 20, 23, 24

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003) ............................................................................................... 24

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) ................................................................................... 13

-iii-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*,
  850 F.3d 785 (5th Cir. 2017) ................................................................. 16

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ............................................................................. 14

*Jacobsen v. Katzer*,
  535 F.3d 1373 (Fed. Cir. 2008) ........................................................... 13

*Kelly v. Primco Mgmt., Inc.*,
  No. CV-14-07263 BRO, 2015 WL 10990368
  (C.D. Cal. Jan. 12, 2015) ..................................................................... 24

*LGS Architects, Inc. v. Concordia Homes of Nev.*,
  434 F.3d 1150 (9th Cir. 2006) ............................................................. 12

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
  629 F.3d 928 (9th Cir. 2010) ................................................... 12, 13, 16

*Moore v. Apple, Inc.*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) ........................................... 18, 19

*Netlist Inc v. Diablo Techs. Inc*,
  No. 13-cv-05962-YGR, 2015 WL 153724 (N.D. Cal. Jan. 12, 2015) ................ 24

*Peker v. Masters Collection*,
  96 F. Supp. 2d 216 (E.D.N.Y. 2000) ................................................... 15

*Pendleton Woolen Mills, Inc. v. Kraff's Men's Wear Co.*,
  No. 3:14-CV-628-PK, 2014 WL 7777762 (D. Or. Nov. 21, 2014) .................... 16

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ............................................................... 17

*Red Baron-Franklin Park, Inc. v. Taito Corp.*,
  883 F.2d 275 (4th Cir. 1989) ............................................................... 15

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ................................................... 10, 19, 21

*S.O.S., Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir. 1989) ............................................................. 12

-iv-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Sega Enters. Ltd. v. MAPHIA*,
 948 F. Supp. 923 (N.D. Cal. 1996) ................................................. 14

*Sony Comput. Entm't Am., Inc. v. Filipiak*,
 406 F. Supp. 2d 1068 (N.D. Cal. 2005) ............................................ 15

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
 No. 3:06-cv-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ................ 23

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
 507 F. Supp. 2d 1096 (C.D. Cal. 2007) ............................................ 20

*Triad Sys. Corp. v. Se. Express Co.*,
 64 F.3d 1330 (9th Cir. 1995) ..................................................... 23

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
 630 F.3d 1255 (9th Cir. 2011) .................................................... 11

*Warner Bros. Entm't v. WTV Sys., Inc.* (*Zediva*),
 824 F. Supp. 2d 1003 (C.D. Cal. 2011) ................................20, 21, 22, 25

*Williams v. Gerber Prods. Co.*,
 552 F.3d 934 (9th Cir. 2008) ..................................................... 18

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) ................................................................. 9

*WPIX, Inc. v. ivi, Inc.*,
 691 F.3d 275 (2d Cir. 2012) ...................................................... 22

**STATE CASES**

*Day v. AT&T Corp.*,
 63 Cal. App. 4th 325 (1998) ...................................................... 18

*DVD Copy Control Ass'n v. Kaleidescape, Inc.*,
 176 Cal. App. 4th 697 (2009) ..................................................... 19

*Golden Eagle Ins. v. Foremost Ins.*,
 20 Cal. App. 4th 1372 (1993) ...................................................... 9

-v-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ................................................................. 19

*Oasis W. Realty, LLC v. Goldman*,
  51 Cal. 4th 811 (2011) ................................................................... 9

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118 (1990) ................................................................ 16

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*,
  195 Cal. App. 3d 1032 (1987) ..................................................... 10

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ................................................................. 17

**FEDERAL STATUTES**

17 U.S.C. § 106 .................................................................... 11, 15

17 U.S.C. § 109(a) ................................................................. 15, 16

17 U.S.C. § 117(c) ........................................................................ 23

17 U.S.C. § 410(c) ........................................................................ 11

17 U.S.C. § 502 .............................................................................. 8

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................... 2, 17, 18

Cal. Bus. & Prof. Code § 17203 ..................................................... 9

Cal. Bus. & Prof. Code § 17500 ............................................... 2, 17

Cal. Bus. & Prof. Code § 17535 ..................................................... 9

Cal. Civ. Code § 1589 .................................................................. 10

Cal. Civ. Code § 3366 .................................................................... 9

Cal. Civ. Proc. Code § 527(a) ........................................................ 8

-vi-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**OTHER AUTHORITIES**

2 William F. Patry, Copyright Law & Practice 1147 ................................................. 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Disney makes its movies available for consumer enjoyment in many different ways, including through a Blu-ray/DVD/Digital HD combination package ("Combo Pack"). A Combo Pack includes a DVD and a Blu-ray disc, along with a paper insert on which a Code is printed, instructing customers that the Combo Pack purchaser can redeem the Code to access a digital download of the movie. An express term of purchase for the Combo Pack—stated on the outside packaging—is that "Codes are not for sale or transfer." Reinforcing this prohibition, a condition of using the online portals for redeeming Codes is that the user "represent that [he or she is] the owner of the physical product that accompanied the digital code at the time of purchase," and the user acknowledges that "[t]he redemption of a digital code sold or transferred separate from the original physical product is prohibited." Klaus Decl. ¶ 2 & Ex. A.

Redbox recently embarked on an illegal scheme of disassembling Disney's Combo Packs and selling the Codes to Redbox's customers separately from the DVD and Blu-ray disc. Redbox boasts that its unlawful offering is a "[s]mart buy." *Id.* Ex. C. In reality, Redbox is flagrantly violating the terms it agrees to by purchasing the Combo Packs and is knowingly and materially contributing to its customers' unauthorized making of digital copies of Disney's movies.

Disney is entitled to a preliminary injunction to stop Redbox's illegal conduct and to halt the continuing irreparable harm that conduct causes to Disney.

First, Disney is likely to succeed on the merits because: (1) Redbox brazenly violates the terms of its purchase contracts; (2) Redbox knowingly and materially contributes to its customers' infringement of Disney's exclusive rights under the Copyright Act; (3) Redbox tortiously interferes with Disney's contractual relationships with its customers; (4) Redbox falsely advertises its offering as a legitimate and lawful way for consumers to obtain digital downloads of Disney's

-1-

movies, a violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; and (5) Redbox violates California's Unfair Competition Law ("UCL"), *id.* § 17200.

Second, Redbox's unlawful conduct is causing continuing, irreparable harm to Disney. Redbox is interfering with Disney's relationships with licensed digital services and competes unfairly with licensees that play by the rules. Redbox undercuts the prices at which authorized licensees make digital content available because it usurps the discount intended for Combo Pack purchasers. A number of licensees have complained to Disney about Redbox's illegal offering, undermining Disney's goodwill with them and its negotiating position for future licenses. Disney and its licensees are also suffering economic harm in the form of lost revenue that cannot be easily measured. Redbox also is damaging Disney's relationship with consumers, causing consumer confusion, and negatively affecting Disney's brand.

Third, the balance of hardships tips decisively for Disney; Redbox cannot complain of being enjoined from unlawful conduct.

Fourth, a preliminary injunction will serve the public interest by enforcing the Combo Pack purchase agreement, preventing further infringement of Disney's copyrights, and protecting consumers from Redbox's fraudulent and unlawful business practices.

## FACTUAL BACKGROUND

### A.    Disney's Production And Distribution Of Movies

Disney or its affiliates[2] produce, own, and distribute some of the world's most popular and critically acclaimed movies, including, among others at issue here,

---

[2] All Plaintiffs in this action are subsidiaries of The Walt Disney Company involved in the production, copyright ownership, and distribution of its motion pictures. Disney Enterprises, Inc., Lucasfilm Ltd. LLC, and MVL Film Finance LLC own the copyrights at issue. Buena Vista Home Entertainment, Inc. has the direct contractual relationship with Combo Pack purchasers and users of the RedeemDigitalMovie.com website.

*Guardians of the Galaxy Vol. 2* (2017), *Beauty and the Beast* (2017), *Rogue One: A Star Wars Story* (2016), *Star Wars: Episode VII–The Force Awakens* (2015), and *Frozen* (2013).  *See* Ehler Decl. Exs. B, E, P, Q, S.

Bringing popular movies to the public requires substantial investment and the risk that any particular work may not be a commercial success.  Disney is able to recoup that investment and bring new works to the public by licensing its exclusive rights under copyright.  Disney authorizes the dissemination of its content in multiple formats and through a variety of distribution channels, including (1) exhibiting movies in theaters; (2) distributing copies on DVDs and Blu-ray discs; (3) authorizing digital downloads through services like iTunes, Amazon, or VUDU; (4) authorizing on-demand streaming for short-term viewing on a per-transaction fee basis (e.g., through iTunes or Google Play); and (5) authorizing subscription on-demand streaming (e.g., through Netflix or Hulu).  Marinelli Decl. ¶ 7.  The distribution of content through digital channels has become an increasingly important revenue source.  *Id.*

### B.  Disney's Combo Packs And Codes

Combo Packs are a bundle of three different consumer offerings in a single package.  Marinelli Decl. ¶ 8.  Two of these offerings are physical copies of a movie: one is on a DVD, the other is on a Blu-ray disc.  *Id.* ¶ 8 & Ex. A.  The third component is a Code.  *Id.* ¶ 8 & Ex. B.

The Code is an alphanumeric code that is printed on a separately wrapped paper insert within the Combo Pack.  *Id.* Ex. B.  The insert directs the Combo Pack purchaser to online portals—RedeemDigitalMovie.com or Movies Anywhere—where the Combo Pack purchaser may redeem the Code and thereafter download or obtain authorized streams of the underlying movie.  *Id.* ¶ 8 & Ex. B; *see also* Klaus Decl. Exs. A, B.

Combo Packs offer consumers a better value than the separate purchase of the Combo Packs' constituent parts.  Marinelli Decl. ¶ 9.  Disney sells Combo Packs to

retailers at a wholesale price that is lower than the combined wholesale price of separately sold DVDs and Blu-ray discs. *Id.* Disney does not sell Codes on a stand-alone basis. *Id.* ¶ 10. However, if the price that Disney charges authorized services for digital downloads is factored into the comparison, the effective discount on the Combo Pack is even greater than the comparison to the stand-alone sale of the two discs. *Id.* ¶ 9.

This discount is ultimately passed on to the purchaser of the Combo Pack. *Id.* The reduced price provides an incentive for consumers to upgrade to the Combo Pack instead of purchasing a single-disc package or separately purchasing access to a digital download. *Id.* Combo Packs provide consumers with multiple means of viewing the movie—e.g., via Blu-ray disc in the living room, DVD in the mini-van, and digital download on mobile devices in between—and also introduce consumers who typically use physical media to the option of accessing content online. *Id.* ¶ 8.

### C. The Contract Governing The Purchase Of Combo Packs Expressly Bars The Sale Or Transfer Of Codes

Disney offers Codes pursuant to contractual terms printed on the outside of the Combo Packs: "Codes are not for sale or transfer." *Id.* ¶ 10 & Ex. A.



The insert on which the Code is printed includes the same prohibition: "Codes are not for sale or transfer."  *Id.* ¶ 10 & Ex. B.



Before a purchaser of a Combo Pack may redeem a Code through RedeemDigitalMovie.com or Movies Anywhere to download a digital copy of the underlying movie, he or she must agree to the following by entering the Code and clicking "Redeem":  "By redeeming a digital code, you represent that you are the owner of the physical product that accompanied the digital code at the time of purchase.  The redemption of a digital code sold or transferred separate from the original physical product is prohibited."  Klaus Decl. Ex. A; *id.* Ex. B ¶ 3(e) (Movies Anywhere terms provide that the user can only redeem a code "from a Digital Copy enabled and Movies Anywhere-eligible physical product that is owned by you").  The terms of service make clear that Codes may be redeemed only by the owner of the corresponding physical products sold in the Combo Pack.  *Id.* Exs. A, B.

### D.     Redbox Recently Began Selling Digital Codes In Violation Of Disney's Contractual Terms And Rights

On or around October 25, Redbox began advertising that it was selling Disney's Codes.[3]  Redbox's website has an entire section devoted to "Digital Codes At The Box," which prominently and exclusively displays Disney titles.  Klaus Decl. Ex. E.  No titles from other studios are available in "Digital Codes At The Box" on Redbox's website.  *Id.* ¶ 6 & Ex. E.



Redbox sells the Codes both through a "reservation online" system and directly through its kiosks.  *Id.* ¶¶ 15, 16 & Exs. D, N, O.  Upon completing the purchase from Redbox, the customer receives the Code insert, disassembled from the Combo Pack.  Redbox bundles the insert in its own Redbox packaging, eliminating the original Disney packaging.  *Id.* Ex. C.

---

[3] Dade Hayes, *Redbox, Studios' Frenemy, Selling Low-Cost Digital Downloads of Disney Films*, Deadline (Oct. 25, 2017, 10:27 am), http://deadline.com/2017/10/redbox-selling-disney-digital-downloads-1202194361/.

-6-

1
2
3
4
5
6
7
8
9
10



11
12      There is no mystery about what Redbox is doing.  Redbox buys the
13 discounted Combo Packs with full knowledge that the terms of purchase expressly
14 provide that Codes are not for sale or transfer.  Nonetheless, Redbox ignores this
15 prohibition—and the same prohibition repeated on the face of the package insert—
16 removes the insert, and then sells the Code to its customers.

17     **E.**    **Redbox Causes Immediate And Irreparable Harm To Disney, Both Directly And Through Harming Its Licensees And Consumers**

18      Because Redbox does not obtain authorization to sell the Codes and instead
19 sells them in breach of contract and in violation of Disney's rights, Redbox is able to
20 offer the Codes at retail prices that are substantially below the retail prices that
21 authorized online services typically charge for digital downloads of the same
22 content ($3.99 compared to $19.99, for example).  *See* Klaus Decl. ¶ 9 & Ex. H
23 (chart showing price comparison).  To take full advantage of its scheme, Redbox
24 markets its service as "cheap," a "[s]mart buy," and otherwise as a low-price
25 alternative to purchasing authorized digital downloads from licensed services.  *Id.*
26 Exs. C, Q.  Redbox thus competes on a separate and unequal playing field from
27 authorized licensees.  Marinelli Decl. ¶¶ 11–12.  This unfair competition results in a
28 difficult to quantify number of lost sales to Disney's licensees (and Disney).  *Id.*

-7-

¶¶ 12, 15–16.  Indeed, several of Disney's licensees have already complained about Redbox's illegal offering.  *Id.* ¶ 13.  Disney's licensees expect it to enforce and protect its rights so they can compete in a fair marketplace.  *Id.*  Redbox's continuing unlawful conduct threatens irreparable harm to Disney's relationships, goodwill, and position for negotiating future licenses with licensees.  *Id.* ¶ 14.

Redbox is touting its sale of Disney's Codes as "pro-consumer."[4]  Redbox, however, is selling Codes to its customers under the false pretense that Redbox has the right to sell the Codes and its customers have the right to redeem them and obtain digital downloads.  Both misrepresentations harm the consumer and Disney.  Marinelli ¶¶ 17–20.  Redbox does not tell its customers (1) that the Codes were sold as part of a Combo Pack; (2) that the terms of purchase expressly bar Redbox from selling the Codes; (3) that a customer who purchases a Code separate from the rest of the Combo Pack does not have authorization to redeem it or to download a copy of the movie; or (4) that a customer who redeems a Code sold by Redbox is violating the conditions of their right to utilize the online service for redemption and that the customer's right to use the online service may be terminated for failure to comply with those conditions.  *Id.* ¶ 17.  Redbox's offering creates the mistaken impression that buying Codes from Redbox is a lawful step in obtaining online access to Disney's movies.  *Id.* ¶¶ 17–18.

## ARGUMENT

Disney has asserted five claims for relief.  Injunctive relief is available for each of them.[5]  Disney satisfies all of the requirements for a preliminary injunction:

---

[4] Todd Spangler, *Disney Sues to Block Redbox's Digital Movie Sales*, Variety (Dec. 1, 2017, 8:18 am), http://variety.com/2017/digital/news/disney-sues-redbox-digital-movie-downloads-1202627882/ (quoting a Redbox spokeswoman) (internal quotation marks omitted).

[5] Breach of contract:  state common law or statute, e.g., Cal. Civ. Code § 3366 *et seq.*; copyright infringement:  17 U.S.C. § 502; tortious interference with contract:

-8-

1  Disney is likely to succeed on the merits of its claims; it will continue to suffer

2  irreparable harm absent preliminary injunctive relief; the balance of equities tip

3  sharply in Disney's favor; and an injunction is in the public interest.  *Winter v. Nat.*

4  *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## I.  DISNEY IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

### A.  Redbox Breaches The Combo Pack Purchase Contract By Selling Codes

Disney will succeed on all four elements of a claim for breach of contract: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citation omitted).

#### 1.  Redbox Enters Into Binding Contracts With Disney When It Buys Combo Packs

A "contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."  *Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l Inc.*, 421 F.3d 981, 987 (9th Cir. 2005) (citation and internal quotation marks omitted).  Redbox assents to the contractual prohibition on selling or transferring Codes—"Codes are not for sale or transfer," which is printed on the outside of the packaging, Marinelli Decl. ¶ 10 & Ex. A—when it repeatedly purchases and opens the Combo Packs. *See Ariz. Cartridge*, 421 F.3d at 987–88 (consumers entered into enforceable contract by buying and opened cartridge packages and were bound by terms printed on outside packaging).  Such terms of purchase are binding and enforceable so long as the consumer had "notice of the condition" and an opportunity "to reject the contract," and received consideration.  *Id.* at 988; *see also Golden Eagle Ins. v.*

state common law or statute, *e.g.*, Cal. Civ. Proc. Code § 527(a); FAL:  Cal. Bus. & Prof. Code § 17535; UCL:  Cal. Bus. & Prof. Code § 17203.

*Foremost Ins.*, 20 Cal. App. 4th 1372, 1387 (1993) ("[A] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." (quoting Cal. Civ. Code § 1589)).  Where, as here, the purchaser "can read the terms and conditions on the box before deciding whether to accept them," the purchaser "accepts the terms placed on usage of the [product] by [purchasing it and] opening the box."  *Ariz. Cartridge*, 421 F.3d at 987; *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (holding that "when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree").  This is true in spades for a sophisticated party like Redbox, which has likely purchased thousands of Combo Packs.

Redbox employs similar prohibitions at the point of sale with its own customers.  For example, Redbox's "Terms and Conditions" state that its online reservations are "non-transferable."  Klaus Decl. Ex. I.  Likewise, Redbox offers for sale "promo codes," which are subject to terms printed on the code that state:  "Must not be copied/sold/offered."  *Id.* ¶ 11 & Ex. J.

### 2. Disney Performs Its Obligations Under The Contracts

Redbox gets the benefit of Disney's performance when it buys a Combo Pack. Redbox obtains a DVD, a Blu-ray disc, and a Code for use subject to the contractual limitations.

### 3. Redbox Breaches Its Contractual Obligations By Selling The Codes

What Redbox cannot do is sell Codes.  Redbox breaches its obligations under the contract when it does just that.  *See Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051 (1987) ("[E]very instance of noncompliance with a contract's terms constitutes a breach.").

### 4.     Redbox's Breach Causes Disney To Suffer Damages

Redbox's breach of the prohibition on selling Codes causes Disney significant harms.  *See* Section II, *infra*.  In addition to suffering monetary harms that are difficult to quantify, Disney suffers irreparable harm including harm to its relationship and goodwill with licensed online services and its customers as well as its digital distribution and brand strategies.  Marinelli Decl. ¶¶ 11–25.

### B.     Redbox Knowingly Contributes To The Infringement Of Disney's Copyrights By Selling Codes

Redbox is liable for contributory infringement of Disney's works if (1) a third party commits infringement, and (2) Redbox materially contributes to that infringing conduct, (3) with actual or constructive knowledge of the infringing activity.  *A&M Records, Inc. v. Napster, Inc.* (*Napster*), 239 F.3d 1004, 1019 (9th Cir. 2001) ("Traditionally, 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a "contributory" infringer.'" (citations omitted)).

### 1.     Redbox's Customers Infringe Disney's Exclusive Right To Copy Its Movies When They Use The Codes To Obtain Unauthorized Digital Downloads

Disney establishes a prima facie case of infringement by (1) "show[ing] ownership" of the copyrights in issue and (2) showing that "at least one exclusive right" under 17 U.S.C. § 106 is violated.  *Id.* at 1013.  Here, Redbox's customers infringe Disney's exclusive right to make copies of its movies.  17 U.S.C. § 106(1).

### a.     Disney Owns Or Controls Valid Copyrights In The Works

Certificates of registration issued by the Copyright Office for the copyrighted works identified in Exhibit A to the complaint (Dkt. 1) are included with this filing.  Ehler Decl. Exs. A–T.  The certificates create a presumption of copyright validity and ownership.  17 U.S.C. § 410(c); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).  Redbox currently offers for sale Codes to

-11-

access all the works listed in Exhibit A to the complaint and, unless enjoined, will

continue to offer Codes for access to these works and for future releases.

### b. Redbox's Customers Who Use Codes To Obtain Digital Downloads Infringe Disney's Right To Copy Its Movies

Downloading a digital copy is an exercise of the reproduction right which,

unless authorized by the copyright owner, infringes the exclusive reproduction right.

*Napster*, 239 F.3d at 1014 ("Napster users who download files containing

copyrighted music violate plaintiffs' reproduction rights.").

Customers who seek to redeem Codes through RedeemDigitalMovie.com

and/or Movies Anywhere must agree to the terms of service.  Disney has a claim for

copyright infringement where a customer exceeds the scope of the license that

allows him or her to obtain a digital download.  *See LGS Architects, Inc. v.

Concordia Homes of Nev.*, 434 F.3d 1150, 1157 (9th Cir. 2006) (contractor with

license to use architectural plans committed copyright infringement when it

"exceeded the scope of its license [by using the plans] in the construction of [a

project not authorized by the license]"); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081,

1087, 1089 (9th Cir. 1989) (the "licensee infringes the owner's copyright if its use

exceeds the scope of its license," in that case, by making a "modified version of the

programs without [the copyright owner's] permission"); *see also MDY Indus., LLC

v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) ("[I]f the licensee acts

outside the scope of the license, the licensor may sue for copyright infringement.").

Consumers who purchase Disney's Codes from Redbox exceed the scope of

the RedeemDigitalMovie.com and Movies Anywhere licenses when they redeem the

Codes for a digital copy of the movie.  The RedeemDigitalMovie.com license

permits the customer to access and download the copyrighted work by entering the

Code *only if that customer is* "the owner of the physical product that accompanied

the digital code at the time of purchase."  Klaus Decl. Ex. A.  Likewise, the Movies

Anywhere terms of service grant the customer a "limited, personal use, non-

-12-

transferable, non-assignable, revocable, non-exclusive and non-sublicensable right to . . . stream or download and install, the movies" subject to restrictions, including that the customer may not "copy the Content (except as expressly permitted by these Movies Anywhere Terms of Use)." *Id.* Ex. B ¶¶ 2(a), 2(b)(ii). The Movies Anywhere terms of service prohibit customers from accessing and downloading a copyrighted work by redeeming a Code that is not "from a Digital Copy enabled and Movies Anywhere-eligible physical product that is owned by you." *Id.* ¶ 3(e). When customers redeem a Redbox-purchased Code to download a movie, they exceed the scope of their license or, put another way, violate a condition precedent to the license. This infringes Disney's exclusive reproduction right. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1382 (Fed. Cir. 2008) (licensee exceeded the scope of the license by not complying with terms of that license); *see also MDY Indus., LLC*, 629 F.3d at 939 (explaining that violation of a condition precedent exceeds the scope of the license).

### 2. Redbox Knowingly And Materially Contributes To The Violation Of Disney's Exclusive Rights By Selling Unauthorized Codes

Redbox's contribution to its customers' infringement is material: "Merely providing the means for infringement may be sufficient" to contribute to copyright infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (quoting 2 William F. Patry, Copyright Law & Practice 1147) (internal quotation marks omitted); *see also Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (defendant made material contribution to infringement by "provid[ing] machinery or goods that facilitated infringement" (citations omitted)).

Here, Redbox provides the key—the unauthorized Code—that enables the unauthorized downloading. It also encourages customers to make the infringing downloads. For example, Redbox advises customers: "You can use your digital movie code to download and view the digital copy of your movie on a number of

-13-

1    services.  Look on the paper insert you received to find the recommended provider

2    for that movie." Klaus Decl. ¶ 12 & Ex. K.  In addition, Redbox promotes its

3    unauthorized sale of Codes as "cheap" and a "[s]mart buy." *Id.* Exs. C, D.  It also

4    devotes an entire page of its website to promoting the sale of Disney's Codes and

5    sent out email notifications to its users promoting its launch of this new offering.  *Id.*

6    Exs. D, Q.  This is material contribution.  *See Sega Enters. Ltd. v. MAPHIA*, 948 F.

7    Supp. 923, 933 (N.D. Cal. 1996) (defendant "did more than provide the site and

8    facilities for the known infringing conduct," he (1) "actively solicited users to

9    upload unauthorized games, [(2)] provided a road map on his BBS for easy

10   identification of Sega games available for downloading, . . . [and (3)] offered

11   copiers for sale to facilitate playing the downloaded games").

12        Redbox knows that it is contributing to the infringement of Disney's

13   copyrights when it sells the Codes to its customers.  The knowledge requirement is

14   "objective" and satisfied "where the defendant knew or had reason to know of the

15   infringing activity."  *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 658

16   (S.D.N.Y. 2013).  Redbox knows of the prohibition on selling Codes; it sees the

17   prohibition on every Combo Pack that it purchases and every time it removes the

18   Code insert and repackages it in a Redbox case.  *See* Klaus Decl. Ex. C.  Redbox

19   also knows its customers are using the Codes in excess of the scope of the

20   RedeemDigitalMovie.com or Movies Anywhere licenses.  Both the Combo Pack

21   and the Code insert direct the user to visit these websites.  Marinelli Decl. ¶ 10 &

22   Exs. A, B.  Redbox knows that copyright owners use terms of service to prohibit

23   unauthorized use, just as Redbox does it its own terms of service.  Klaus Decl. Ex. I.

24        Redbox certainly reviewed the terms of service governing redemption of the

25   Codes and has knowledge, or Redbox willfully blinded itself to what those terms

26   say.  Redbox cannot avoid liability by claiming it is ignorant.  *See Global-Tech*

27   *Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (doctrine of "willful

28   blindness" prevents defendants from "deliberately shielding themselves from clear

-14-

evidence of critical facts that are strongly suggested by the circumstances"). "Willful blindness is knowledge, in copyright law." *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) (citations omitted); *Sony Comput. Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1075 (N.D. Cal. 2005) ("In the copyright infringement context, 'willful' means acting with knowledge that one's conduct constitutes copyright infringement." (citations and internal quotation marks omitted)).

### 3. The First Sale Defense Is Inapplicable To The Violation Of Disney's Exclusive Right Of Reproduction

Redbox has not provided any justification for its sale of Disney's Codes. Although Redbox relies on the first sale defense to rent DVDs and Blu-ray discs through its kiosks, that defense is unavailable to Redbox for the sale of Codes.

The first sale defense provides:  "Notwithstanding the provisions of section 106(3), the owner of a particular copy . . . lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy."  17 U.S.C. § 109(a).  It is a defense only to a claim based on infringement of the copyright owner's right of *distribution*, 17 U.S.C. § 106(3), whereas Redbox's liability arises from the violation of Disney's right of *reproduction*, *id*. § 106(1).  *See Red Baron-Franklin Park, Inc. v. Taito Corp*., 883 F.2d 275, 280–81 (4th Cir. 1989) ("[T]he first sale doctrine has no application to the rights of the owner of a copyright guaranteed by § 106, except the right of distribution." (citations omitted)); *ReDigi Inc.*, 934 F. Supp. 2d at 655 ("[T]he first sale defense does not apply to ReDigi's infringement of those [reproduction] rights." (citation omitted)); *Peker v. Masters Collection*, 96 F. Supp. 2d 216, 221 (E.D.N.Y. 2000) ("no defense that [defendant] used a lawfully acquired object to achieve its unlawful goal of copying").

The defense would be inapplicable even if the claim were for violation of the distribution right (which Disney's claim is not).  The Code is not "*a particular*

-15-

1   *copy*" of a work.  17 U.S.C. § 109(a) (emphasis added).  The Code is just that—a

2   Code that, when redeemed in accordance with the applicable terms of service,

3   allows an authorized user of the Code to obtain a digital download.

4       The first sale defense likewise is inapplicable to Redbox's violations of state

5   law.  *See Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785,

6   794 (5th Cir. 2017) ("Section 109 by its plain terms limits only the exclusive right to

7   distribute."); *Pendleton Woolen Mills, Inc. v. Kraff's Men's Wear Co.*, No. 3:14-CV-

8   628-PK, 2014 WL 7777762, at *8 (D. Or. Nov. 21, 2014) (first sale defense did not

9   reach claims in the action other than copyright).

### C.    Redbox Induces Purchasers Of Codes To Breach Their Contracts With Disney And Thereby Is Liable For Tortious Interference

11       Tortious interference with a contract under California law requires: "(1) a

12   valid contract between plaintiff and a third party; (2) defendant's knowledge of this

13   contract; (3) defendant's intentional acts designed to induce a breach or disruption

14   of this contractual relationship; (4) actual breach or disruption of the contractual

15   relationship; and (5) resulting [economic] damage."  *Pac. Gas & Elec. Co. v. Bear

16   Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).  Courts in the Ninth Circuit have held

17   that where, as here, a party interferes with a copyright owner's license for the use of

18   its works, the interfering party is liable for tortious interference.  *See Altera Corp. v.

19   Clear Logic, Inc*., 424 F.3d 1079, 1091 (9th Cir. 2005) (encouragement to breach

20   use restrictions constituted tortious interference).

21       Disney enters into or is the beneficiary of valid terms-of-service contracts

22   with users of RedeemDigitalMovie.com and Movies Anywhere.  *See MDY Indus.,

23   LLC*, 629 F.3d at 955 (holding "operative EULA and ToU" (terms of service) were

24   "a valid contractual relationship" between copyright owner and its customers).

25   Redbox knows that Disney enters into valid contracts with customers who must

26   agree to terms of service before redeeming a Code through

27   RedeemDigitalMovie.com or Movies Anywhere.  Redbox induces a breach of these

28

-16-

terms of service when it sells Codes to those customers, thereby leading those customers to believe they can use the Code to obtain a digital download.  Klaus Decl. ¶¶ 13, 14 & Exs. L, M.[6]  In fact, those customers have no such right to use the Redbox-sold Code to obtain a digital download, because those customers do not own the physical product sold as part of the same Combo Pack.  *See id.* Exs. A, B. And, those customers breach the terms-of-service contracts when they redeem Codes sold to them by Redbox.  *See id.*

The customers' breach causes Disney to suffer economic (as well as other) harms.  *See* Section II *infra*; Marinelli Decl. ¶¶ 11–25.  For example, a customer who uses the Redbox-sold Code to obtain a digital download has no need to buy a digital download from an authorized online service, thereby leading to lost revenue, although the exact amount cannot be easily quantified.  *Id.* ¶ 15.

### D.   Redbox's Deceptive Selling And Marketing Of The Codes Is Fraudulent And False Advertising Under Sections 17200 And 17500 Of The California Business & Professions Code

California's FAL and UCL protect consumers from deceptive advertising and unfair practices.  To state a claim under either statute "based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived."  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985–86 (9th Cir. 2015) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)) (internal quotation marks omitted) (same standard applies to both FAL and UCL consumer deception cases).  These laws encompass not only false statements, but also "perfectly true statement[s] couched in such a manner that [they are] likely to mislead or deceive the consumer, such as by failure to disclose other relevant

---

[6] Redbox's FAQ's provide:  "What is a digital movie code?  A digital movie code is used to access the digital version of a movie allowing you to stream or download the movies." and "How do I redeem my digital movie code?  1. Look for the redemption URL on the paper insert you received from Redbox . . . 2. Type the URL on an internet-connected browser.  3. Enter the digital movie code printed on the insert.  4. Follow the on-screen prompts, and enjoy the show!"

information." *Ariz. Cartridge*, 421 F.3d at 985 (quoting *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332–33 (1998)) (internal quotation marks omitted).  Whether consumers are likely to be deceived is evaluated under the "reasonable consumer" test.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

Here, Redbox's marketing of the Codes falsely suggests it is a legitimate means of downloading Disney movies.  Marinelli Decl. ¶ 18.  Redbox deceives consumers by repackaging the Code and intentionally failing to inform them that the Code was a part of a Combo Pack and that terms and conditions apply to its use, including that the Code may only be redeemed by the owner of the physical products that accompanied the Code.  *Id.* ¶ 17; Klaus Decl. Exs. A, B.  Redbox tells its customers that the Codes are a way to "download the movie," that "[s]ince you own the movie, you can view it as many times as you like," and expressly instructs consumers that they may follow the directions on the Code and then "enjoy the show!"  Klaus Decl. ¶¶ 12–14, 17 & Exs. K–M, P.  A reasonable consumer would understand those statements to mean that Redbox is authorized to sell the Codes and the consumer who buys a Code from Redbox may legally download a digital copy of the underlying movie.  Redbox thus omits information any consumer would consider relevant—that Redbox is not authorized to sell the Codes, and a consumer who purchases a Code from Redbox is not licensed to download a copy of a movie.

**E.**    **Redbox Engages In An Unlawful Business Practice In Violation Of Section 17200 Of The California Business & Professions Code By Committing False Advertising And Tortiously Interfering With Disney's Contracts With Its Customers**

Tortious interference with contract is "unlawful" conduct under the UCL.  *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (citing *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007)) (internal quotation marks omitted) ("Plaintiff has alleged a cognizable UCL claim based on Plaintiff's tortious interference with contract claim." (citing *CRST Van*, 73 F. Supp. 3d at 1205)).  Likewise, a violation of California's False Advertising Law

-18-

can serve as the predicate "unlawful" conduct under the UCL.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011) (specific and general statutes governing false advertising constituted unlawful business practices under UCL).

Redbox has tortiously interfered with Disney's contracts with its customers by inducing those customers to exceed the scope of (and thereby breach) the terms of service for RedeemDigitalMovie.com and Movies Anywhere.  Redbox has also misled customers regarding its legitimacy in selling the Codes and consumers' ability to use the Codes consistent with the terms of service.  That same conduct constitutes an unlawful business practice under the UCL.  *See Moore*, 73 F. Supp. 3d at 1205; *Kwikset Corp.*, 51 Cal. 4th at 317.

## II.   ABSENT AN INJUNCTION, DISNEY WILL CONTINUE TO SUFFER IRREPARABLE HARM

Harm is irreparable, among other reasons, where "the loss of goodwill [and] negotiating leverage . . . cannot readily be remedied with damages."  *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." (citation and internal quotation marks omitted)).  In the context of a breach of contract claim, "[i]rreparable harm may be established where there is the fact of an injury, such as that arising from a breach of contract, but where there is an inability to ascertain the amount of damage."  *DVD Copy Control Ass'n v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 722 (2009); *see also Register.com, Inc.*, 356 F.3d at 404 ("We have found, for example, that injunctive relief is appropriate where it would be 'very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come.'" (citation omitted)).  That is this case.  Redbox is inflicting immediate and irreparable harm on Disney that is not easily quantified or remedied by monetary damages, and Redbox will continue to do so unless enjoined.

*First*, Redbox interferes with Disney's relationships and goodwill with licensed digital services.  Marinelli Decl. ¶¶ 11-14.  Harm to goodwill is irreparable.  *See VidAngel*, 869 F.3d at 865 (affirming district court's finding that "VidAngel's service undermines [the plaintiffs] negotiating position . . . and also damages goodwill with licensees. . . because licensees raised concerns about 'unlicensed services like VidAngel's'" (internal quotation marks omitted)); *see also Warner Bros. Entm't v. WTV Sys., Inc.* (*Zediva*), 824 F. Supp. 2d 1003, 1012 (C.D. Cal. 2011) (holding Zediva's infringing service caused irreparable harm to "Plaintiffs' relationships, including the goodwill developed with their licensees"); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1115 (C.D. Cal. 2007) (irreparable harm includes "damage to goodwill").

Redbox's unauthorized sale of Codes at a price below what licensees charge for digital downloads harms the licensees' business.  Redbox's conduct thereby harms Disney's goodwill with those licensees and its position in negotiating future licenses with them.  For example, Redbox sells the *Moana* Code for $5.99 when iTunes offers a digital download for $19.99.  Klaus Decl. ¶¶ 7, 8 & Exs. F, G; *see also id.* Ex. H.  Disney's licensees are therefore disadvantaged in the marketplace and are likely losing revenue, because some customers will buy Codes from Redbox rather than obtain digital downloads from authorized licensees.  These licensees also lose goodwill with their customers, who turn to an unauthorized source (Redbox) to obtain the means to digitally download movies that the licensees offer, but at a lower price than the licensees' offering.  Marinelli Decl. ¶ 12.  Redbox's undermining of Disney's relationships with its licensees negatively affects Disney's goodwill with those licensees and its position in negotiating future licenses.  *Id.* ¶ 14.  Licensees have already complained to Disney, proving this harm is ongoing.  *Id.* ¶ 13.

*Second*, Redbox causes economic damages to Disney that are "difficult to calculate [in terms of] monetary damages," justifying injunctive relief.

-20-

1  *Register.com, Inc.*, 356 F.3d at 404 (citation and internal quotation marks omitted).

2  Redbox's unjustified undercutting of licensees' prices ultimately means those

3  licensees will sell fewer digital downloads of Disney titles, and that means less

4  revenue to Disney.  Marinelli Decl. ¶ 15.  A further result of Redbox's conduct is

5  that licensees may give Disney's titles less prominent placement or other forms of

6  promotion vis-à-vis Disney's competitors, in turn leading to even fewer digtial

7  downloads of Disney titles through those services.  *Id.*  Disney's sales of Combo

8  Packs to consumers are also likely to suffer because customers may purchase a

9  DVD or Blu-ray disc at retail and then a Code from Redbox, instead of the higher

10  priced Combo Pack.  *Id.* ¶ 16.  These damages are difficult to quanitfy.

11  *Third*, Redbox's conduct harms Disney's relationships with its customers and

12  customers' perceptions of the legitimate digital market.  *See Zediva*, 824 F. Supp. 2d

13  at 1013 (finding that the Zediva service threatened "to create incorrect but lasting

14  impressions with consumers about what constitute[d] lawful video on demand

15  exploitation" of copyrighted works (citation omitted)).  Redbox does not disclose to

16  consumers that the Codes were originally sold as part of a Combo Pack and that the

17  Codes are subject to various terms and conditions.  Marinelli Decl. ¶ 17.  This

18  threatens to confuse consumers in a number of ways.  Consumers may be confused

19  as to whether they have the authority to redeem the Redbox-sold Codes for digital

20  downloads.  *Id.*  Consumers may also be confused into believing that what Redbox

21  is doing is legal, altering their perceptions of the legitimate digital market.  *Id.* ¶ 18.

22  Because Redbox unfairly sells Codes at prices below the market price for digital

23  downloads, consumers may form inaccurate perceptions about the value of digital

24  downloads of Disney's movies.  *Id.* ¶ 19.

25  *Fourth*, Redbox's unlawful conduct interferes with Disney's digital

26  distribution strategy and deprives Disney of its exclusive right to control how (under

27  what conditions), when (on what date and for what duration), what (which titles)

28  and for how much (at what wholesale price) its copyrighted content is distributed.

-21-

*Zediva*, 824 F. Supp. 2d at 1012 ("Plaintiffs have the exclusive right to decide when, where, to whom, and for how much they will authorize transmission of their Copyrighted Works to the public." (citation omitted)).  To date, Disney has elected not to sell Codes as a freestanding commercial product that consumers are able to use, consistent with the terms of service of a site that enables redemption, to access digital copies of its movies.  Marinelli Decl. ¶ 22.  Instead, Disney has chosen to package Codes with physical copies of the movie.  *Id.*  By granting itself the unilateral right to sell Codes as stand-alone items, Redbox deprives Disney of its exclusive right to control the dissemination of its copyrighted content.  *Id.*  Likewise, Redbox sets an example for unauthorized conduct in the marketplace that, if followed, could have immeasurable negative impact on Disney's ability to negotiate and control the digital distribution of its copyrighted works.  *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 286 (2d Cir. 2012) (unrestrained unauthorized Internet retransmissions of broadcast programming "would encourage" other services to follow suit, diminish plaintiffs' negotiating position, adversely affect "quantity and quality of efforts put into creating" new works, and "drastically change the industry, to plaintiffs' detriment" (citation omitted)).

*Fifth*, Redbox causes immediate and irreparable harm to Disney's brand.  Disney aims to offer the best experience and highest-quality content to consumers.  Marinelli Decl. ¶ 23.  The low prices that Redbox charges may lead consumers to believe that Disney's online content is somehow inferior to that of other studios.  *Id.*  Further, when Redbox repackages the Codes and places them into Redbox-branded containers, it removes the Disney-branded packaging that is included with the Combo Packs, including any promotional material marketing other Disney offerings.  *Id.* ¶ 24.

These harms are imminent and continuing:  Licensed services are complaining about Redbox's unauthorized sale of Codes; Redbox's customers are redeeming Codes to obtain unauthorized access to digital copies of Disney's

-22-

copyrighted works; Disney and its licensees are losing sales that cannot be easily quanitified; Disney's relationships with its licensees and its customers are suffering; and Disney's brand and ability to control distribution of its content are being affected.  The impact of these harms will be extremely difficult to measure in dollar terms.

## III.   THE BALANCE OF HARDSHIPS TIPS DECISIVELY FOR DISNEY

The threat of harm to Disney, as demonstrated above, is substantial.  By contrast, Redbox "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995), *superseded on other grounds by* 17 U.S.C. § 117(c); *see also Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009) ("Since [defendant] does not (and cannot) claim any *legitimate* hardships as a result of being enjoined from committing unlawful activities, and [plaintiff] would suffer irreparable and immeasurable harms if an injunction were not issued, this factor weighs strongly in favor of [plaintiff's] motion.").

Likewise, "financial hardship from ceasing infringing activities" is not sufficient to "outweigh the irreparable harm likely to befall [copyright owner plaintiff] without an injunction." *VidAngel*, 869 F.3d at 867.  Redbox will not suffer a legitimate hardship if it is enjoined because the very core of its newly launched offering of Disney Codes involves breaching contracts, infringing copyrights, tortiously interfering with Disney's contracts with its customers, and violating state law.

## IV.   A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

"[T]he public has an interest in seeing contractual arrangements enforced." *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-cv-0891-B, 2007 WL 4823761, at *18 (N.D. Tex. Sept. 12, 2007) (citing *Corp. Relocation, Inc. v. Martin*, No. 3:06-CV-232-L, 2006 WL 4101944, at *18 (N.D. Tex. Sept. 12, 2006)) ("The public has an interest in knowing and understanding that persons who breach their agreements

-23-

may not profit or otherwise benefit from such conduct." (citing *Corp. Relocation*, 2006 WL 4101944, at * 18) (internal quotation marks omitted)).  Upholding copyright protection is also in the public interest.  *See Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2003) ("[T]he economic philosophy behind the [Copyright] [C]lause . . . is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors." (citation & internal quotation marks omitted)); *VidAngel*, 869 F.3d at 867 ("'[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming' and motion pictures." (citations omitted)); *Kelly v. Primco Mgmt., Inc.*, No. CV-14-07263 BRO (SHx), 2015 WL 10990368, at *16 (C.D. Cal. Jan. 12, 2015) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections . . . ." (citations & internal quotation marks omitted)).

The public interest also favors enjoining Redbox's unfair competition and misleading of consumers regarding Redbox's right to sell, and consumers' right to redeem, Codes.  *See Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013) (enjoining trademark-infringing advertising to "prevent[] consumer confusion" and thereby "serve[] the public interest" (citation omitted)); *Netlist Inc v. Diablo Techs. Inc*, No. 13-cv-05962-YGR, 2015 WL 153724, at *9 (N.D. Cal. Jan. 12, 2015) (finding it in the public interest to enjoin "the unfair competition that arises from improper use of [trade secret] information").

## V.   MINIMAL SECURITY SHOULD BE REQUIRED

The required security should be minimal.  Any hardship Redbox faces results from its voluntary decision to build a business around violating Disney's rights.  Selling these Codes is a new and limited aspect of Redbox's business (it sells only Disney Codes) and Redbox will not suffer substantially if preliminarily enjoined from offering Disney's Codes.  Disney respectfully submits that security in the

amount of $50,000 is appropriate.  *See Zediva*, 824 F. Supp. 2d at 1015 (setting bond at $50,000).

## CONCLUSION

The Court should grant Disney's motion for a preliminary injunction.


DATED:  December 21, 2017          MUNGER, TOLLES & OLSON LLP



                                   By:   _____*/s/ Kelly M. Klaus*_____
                                         KELLY M. KLAUS
                                         Attorneys for Plaintiffs