GLENN D. POMERANTZ (State Bar No. 112503)
glenn.pomerantz@mto.com
ROSE LEDA EHLER (State Bar No. 296523)
rose.ehler@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
STEPHANIE GOLDFARB HERRERA (State Bar No. 313887)
stephanie.herrera@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC., LUCASFILM LTD. LLC, and MVL FILM FINANCE LLC,<br><br>              Plaintiffs,<br><br>       vs.<br><br>REDBOX AUTOMATED RETAIL, LLC,<br><br>              Defendant. | Case No. 2:17-cv-08655-DDP (AGRx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. Dean D. Pregerson<br><br>Date:   June 4, 2018<br>Time:   10:00 a.m.<br>Ctrm:  9C<br><br>Filed concurrently:<br><br>(1)   Declaration of Janice Marinelli<br>(2)   Declaration. of Kelly M. Klaus<br>(3)   [Proposed] Order<br><br>Trial Date:      None Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 4, 2018, at 10:00 a.m., before the Honorable Dean D. Pregerson, United States District Judge, in Courtroom 9C of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California, Plaintiffs Disney Enterprises, Inc., Lucasfilm Ltd. LLC, and MVL Film Finance LLC (collectively, "Disney"[1]) will and hereby do move for a preliminary injunction restraining Defendant Redbox Automated Retail, LLC ("Redbox") from selling Disney's digital movie codes ("Codes").

This Motion is  made on the following grounds, as further explained in the accompanying Memorandum of Points and Authorities and supporting papers:

1.      Disney is likely to succeed on the merits of its claim that Redbox knowingly and materially contributes to the infringement of Disney's exclusive reproduction rights, 17 U.S.C. § 106(1), by (a) selling Codes with knowledge that its customers will use them to make unauthorized download copies of Disney movies, and (b) materially contributing to that unauthorized copying by selling the Codes and encouraging its customers to use them.

2.      Absent a preliminary injunction, Disney will continue to suffer immediate and irreparable harms that are not easily quantifiable or remedied by money damages, including interfering with Disney's right to determine how to distribute its content and harming its relationships, goodwill, and ability to negotiate with authorized licensees, and relationships with its customers.

3.      The balance of equities tips sharply for Disney.

4.      The requested injunction is in the public interest.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Declarations of Janice Marinelli

---

[1] Abbreviations introduced in this Notice of Motion and Motion are used in the accompanying Memorandum of Points and Authorities.

("Marinelli Decl."), and Kelly M. Klaus ("Klaus Decl."), and Exhibits thereto; all documents on file in this action; and such further or additional evidence or argument as may be presented before or at the time of the hearing on this Motion.

This Motion is exempt from the pre-motion meet-and-confer requirements of Civil Local Rule 7-3.

DATED:  April 9, 2018                    MUNGER, TOLLES & OLSON LLP




                                        By:   ____/s/  *Kelly M. Klaus*_____
                                              KELLY M. KLAUS
                                        Attorney for Plaintiffs

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................1

    A.    Changes To The RedeemDigitalMovie.Com And Movies Anywhere Licensing Terms ...............................................................1

    B.    Notwithstanding Changes To The Licensing Terms, Redbox Refuses To Stop Selling Codes...............................................2

ARGUMENT...........................................................................................................2

I.    DISNEY IS LIKELY TO SUCCEED ON THE MERITS OF ITS CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM....................3

    A.    Redbox Knowingly And Materially Contributes To Its Customers' Infringement Of Disney's Copyrights.................................3

        1.    Redbox's Customers Infringe By Redeeming Redbox-Sold Codes To Make Download Copies Of Disney Movies ...............3

            a.    Disney Owns The Copyrights At Issue .............................3

            b.    Redbox's Code Customers Infringe Disney's Copyrights .........................................................................3

        2.    Redbox Knows Its Customers Are Infringing ...............................4

        3.    Redbox Provides The Means For And Encourages Its Customers To Infringe ....................................................................5

    B.    Redbox's Defenses Have Either Been Rejected Or Mooted .................5

        1.    The First-Sale Defense Does Not Apply ......................................6

        2.    A Copy Made By Redeeming A Code Is Subject To A License ........................................................................................6

        3.    Redbox's Misuse Defense Is Moot...............................................7

II.    ABSENT AN INJUNCTION, DISNEY WILL CONTINUE TO SUFFER IRREPARABLE HARM ....................................................10

III.    THE BALANCE OF HARDSHIPS TIPS DECISIVELY FOR DISNEY ........................................................................................13

IV.    A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST ..........14

V.    MINIMAL SECURITY SHOULD BE REQUIRED.....................................15

CONCLUSION.....................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
   114 F. Supp. 2d 896 (N.D. Cal. 2000).................................................. 13

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ................................................. 3, 4, 5, 9

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
   166 F.3d 772 (5th Cir. 1999) .................................................................. 9

*Am. Broad. Cos. v. Aereo, Inc.*,
   No. 12-CV-1540, 2014 WL 5393867 (S.D.N.Y. Oct. 23, 2014) ........................ 11

*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011) ............................................................. 8, 9

*Arista Records LLC v. Lime Grp. LLC*,
   784 F. Supp. 2d 398 (S.D.N.Y. 2011) ..................................................... 5

*Blackberry Ltd. v. Typo Prods. LLC*,
   No. 14-CV-00023-WHO, 2014 WL 1318689 (N.D. Cal. Mar. 28,
   2014) ...................................................................................................... 13

*Capitol Records, LLC v. ReDigi Inc.*,
   934 F. Supp. 2d 640 (S.D.N.Y. 2013) ..................................................... 4

*Disney Enters., Inc. v. VidAngel, Inc.*,
   869 F.3d 848 (9th Cir. 2017)..............................................11, 12, 13, 14

*DSC Commc'ns Corp. v. DGI Techs., Inc.*,
   81 F.3d 597 (5th Cir. 1996) .................................................................. 9

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003) ............................................................................ 14

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) .................................................................. 5

*Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*,
   915 F. Supp. 2d 1138 (C.D. Cal. 2012)................................................ 11

1
2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3
4

*Fox Television Stations, Inc. v. FilmOn X LLC,*
   966 F. Supp. 2d 30 (D.D.C. 2013) .................................................................. 11, 12

5
6

*Lasercomb Am., Inc. v. Reynolds,*
   911 F.2d 970 (4th Cir. 1990) .............................................................................. 8, 9

7

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
   454 F. Supp. 2d. 966 (C.D. Cal. 2006) .................................................................. 7

8
9

*Microsoft Corp. v. Comput. Support Servs. of Carolina, Inc.,*
   123 F. Supp. 2d 945 (W.D.N.C. 2000) ................................................................... 8

10
11

*Microsoft Corp. v. Jesse's Computs. & Repair, Inc.,*
   211 F.R.D. 681 (M.D. Fla. 2002) ........................................................................... 8

12
13

*MySpace, Inc. v. Wallace,*
   498 F. Supp. 2d 1293 (C.D. Cal. 2007) ............................................................... 12

14
15

*In re Napster, Inc. Copyright Litig.,*
   191 F. Supp. 2d 1087 (N.D. Cal. 2002) .................................................................. 7

16
17

*Omega S.A. v. Costco Wholesale Corp.,*
   776 F.3d 692 (9th Cir. 2015) ................................................................................. 9

18
19

*Oracle Am., Inc. v. Google LLC,*
   Nos. 2017-1118, 2017-1202, slip op. (Fed. Cir. Mar. 27, 2018) ......................... 10

20

*Oracle USA, Inc. v. Rimini St., Inc.,*
   879 F.3d 948 (9th Cir. 2018) ..................................................................... 3, 4, 7, 8, 9

21
22

*Perfect 10, Inc. v. Amazon.com, Inc.,*
   508 F.3d 1146 (9th Cir. 2007) ............................................................................... 8

23
24

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
   121 F.3d 516 (9th Cir. 1997) ................................................................................. 9

25
26

*S.O.S., Inc. v. Payday, Inc.,*
   886 F.2d 1081 (9th Cir. 1989) ........................................................................... 4, 7

27
28

*Sega Enters. Ltd. v. MAPHIA,*
   948 F. Supp. 923 (N.D. Cal. 1996) ........................................................................ 5

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) .................................................................. 11

*Triad Sys. Corp. v. Se. Express Co.*,
    64 F.3d 1330 (9th Cir. 1995) .................................................................. 13

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
    630 F.3d 1255 (9th Cir. 2011) .................................................................. 3

*United States v. Moore*,
    604 F.2d 1228 (9th Cir. 1979) .................................................................. 6

*Vernor v. Autodesk, Inc.*,
    621 F.3d 1102 (9th Cir. 2010) ............................................................. 6, 7

*Warner Bros. Entm't v. WTV Sys., Inc.*,
    824 F. Supp. 2d 1003 (C.D. Cal. 2011) .......................................... 11, 15

*Windsurfing Int'l Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986) ................................................................ 13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................ 3, 12

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275, 286 (2d Cir. 2012) ........................................................... 11

**FEDERAL STATUTES**

17 U.S.C. § 106 ............................................................................................ 3, 4, 6

17 U.S.C. § 109 .............................................................................................. 5, 6

17 U.S.C. § 117(c) ............................................................................................ 13

17 U.S.C. § 410(c) .............................................................................................. 3

**OTHER AUTHORITIES**

Paul Goldstein, Goldstein on Copyright § 8.1 (3d. ed. 2016) ......................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Court denied Disney's original motion for a preliminary injunction on the ground that certain licensing terms on the Code-redemption websites could support Redbox's affirmative defense of copyright misuse.  Dkt. 74 at 15-18 ("Order"). (Disney refers to its original motion, Dkt. 13, as the "first PI Motion.")  Disney has revised the website licensing terms to address the Court's concerns and moot Redbox's misuse defense.[2]  Redbox, however, still refuses to stop selling Codes. The Court's Order rejects Redbox's remaining defenses, including most notably its first-sale defense.  In the meantime, the harm to Disney's relationships with licensees and customers and its ability to control the exploitation of its exclusive rights continues.  Disney therefore respectfully renews its motion for an injunction halting Redbox's infringing conduct.

## BACKGROUND

The Court is familiar with the background in this case.  Disney therefore limits this discussion to recent factual and procedural developments.[3]

### A.    Changes To The RedeemDigitalMovie.Com And Movies Anywhere Licensing Terms

Following the Order, Disney revised the terms on RedeemDigitalMovie.com and Movies Anywhere.  To redeem a Code through either site, a user must represent that he or she, or a member of his or her family, "obtained the [C]ode in an original disc + code package [i.e., a Combo Pack] and the [C]ode was not purchased

---

[2] Although Disney respectfully disagrees that the prior licensing terms could provide a basis for a copyright misuse defense, as described below, the revised terms condition redeeming a Code and downloading a movie only on Codes being acquired in an original disc + code combination package ("Combo Pack") and not purchased separately.

[3] Disney refers to and incorporates its prior background summary and supporting evidence.  *See* first PI Motion at 2-8; Reply ISO Prelim. Inj. (Dkt. 55) at *passim*, 16-25.

-1-

separately."  Klaus Decl. Ex. A (RedeemDigitalMovie.com); *id.* Ex. C (Movies Anywhere) (same).  The representation "is a condition of redemption of the Code and of . . . obtaining a license to access a digital copy of the movie."  *Id.* Ex. A (RedeemDigitalMovie.com); *id.* Ex. C (Movies Anywhere).  The user must make that representation when entering the Code and clicking "redeem."  *Id.* Ex. A; *id.* Ex. C.

The terms of use reinforce this express condition of using the services to make download copies.  Klaus Decl. Ex. B (RedeemDigitalMovie.com Terms and Conditions); *id.* Ex. D (Movies Anywhere Terms of Use).  Nothing in the licensing terms on these websites conditions a user's ability to redeem a Code and make a download copy on the user's possessing the discs that were part of the underlying Combo Pack when redeeming a Code.

**B.**  **Notwithstanding Changes To The Licensing Terms, Redbox Refuses To Stop Selling Codes**

After modifying the online licensing terms, Disney prepared an amended complaint and provided it to Redbox's counsel.  Klaus Decl. ¶ 2.  Disney inquired whether, in light of the changes, Redbox would stop selling Codes.  *Id.*  Redbox agreed to stipulate to the filing of the amended complaint, but refused to stop selling Codes.  *Id.*  Within the last month, Redbox started selling Codes for *Coco* and *Thor: Ragnarok*.  *Id* ¶¶ 7-8, Exs. E-F.  Absent an injunction, Redbox will continue to sell Codes for Disney's next Combo Pack release (*Black Panther*) and releases after that *ad infinitum*.  Disney therefore renews its motion for a preliminary injunction.

### ARGUMENT

Disney satisfies all of the requirements for a preliminary injunction.  In light of the changes to the website terms and the Court's disposition of Redbox's defenses, Disney likely will succeed on the merits; Disney has suffered and will continue to suffer irreparable harm absent an injunction; the balance of the equities

tip sharply in Disney's favor; and an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## I.   DISNEY IS LIKELY TO SUCCEED ON THE MERITS OF ITS CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM

### A.   Redbox Knowingly And Materially Contributes To Its Customers' Infringement Of Disney's Copyrights

Disney likely will prevail on its contributory copyright infringement claim because (1) Redbox's customers infringe Disney's copyrights, and (2) Redbox materially contributes to that infringing conduct, (3) with actual or constructive knowledge of the same.  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001).

#### 1.   Redbox's Customers Infringe By Redeeming Redbox-Sold Codes To Make Download Copies Of Disney Movies

Disney states a prima facie claim of infringement by (1) "show[ing] ownership" of the copyrights in issue, and (2) showing that "at least one exclusive right" under 17 U.S.C. § 106 is violated.  *Id.* at 1013.

#### a.   Disney Owns The Copyrights At Issue

Disney owns the copyrights at issue.  Exhibit A to the Amended Complaint (Dkt. 82-1) identifies Disney movies for which Redbox currently sells Codes, as well as forthcoming releases for which Redbox will offer Codes unless enjoined. Certificates of copyright registration for each of these works are included with this filing.  Klaus Decl. Exs. G-Y.  The certificates create a presumption of copyright validity and ownership.  17 U.S.C. § 410(c); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).

#### b.   Redbox's Code Customers Infringe Disney's Copyrights

Disney has the exclusive right to make and authorize others to make copies of its movies.  17 U.S.C. § 106(1).  Redbox's customers infringe Disney's rights by redeeming Codes purchased from Redbox to make unauthorized download copies of Disney movies through RedeemDigitalMovie.com or Movies Anywhere.

The Ninth Circuit has made clear that an individual violates a copyright owner's exclusive rights under § 106(1) by making an unauthorized download copy of a copyrighted work. *Napster*, 239 F.3d at 1014.  Redbox's customers have no authorization to make download copies using Codes sold by Redbox.  In particular, when Redbox's customers redeem Redbox-sold Codes to download movies, they are acting outside the scope of the licenses because they cannot satisfy the condition requiring that they "obtain[] the code in an original disc + code package" and not "purchase[] [it] separately."  Klaus Decl. Exs. A, C.  Because Redbox's customers act outside the scope of the license, they are copyright infringers.  "[W]hen a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement." *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 954 (9th Cir. 2018) (citation omitted); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) ("A licensee infringes the owner's copyright if its use exceeds the scope of its license.").

### 2.   Redbox Knows Its Customers Are Infringing

The knowledge requirement is satisfied because Redbox "know[s] or ha[s] reason to know" of its customers' infringing activity. *Napster*, 239 F.3d at 1020; *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 658 (S.D.N.Y. 2013) (knowledge element is "objective" and satisfied "where the defendant knew or had reason to know of the infringing activity").

Redbox knows exactly what its customers are doing with the Codes it sells them.  Redbox tells its customers to use the Codes to "download the digital version of your movie to the device of your choice."  Klaus Decl. Ex. AA; *see also id*. Ex. Z (Redbox instructing customers to redeem Codes through the websites listed on the Code inserts, RedeemDigitalMovie.com and Movies Anywhere).  And Redbox directs its customers to follow the on-screen prompts that require agreement to the terms of the redemption sites. *See id*. Ex. Z (telling customers to visit the redemption sites, "[e]nter the digital movie code," "[f]ollow the on-screen prompts,

and enjoy the show!").  Redbox knows or should know the conditions those terms require users to satisfy, that its Code customers cannot satisfy those conditions, and that those customers act outside the scope of the license agreements when they make a download copy.

### 3. Redbox Provides The Means For And Encourages Its Customers To Infringe

Redbox contributes to its customers' infringing activity by (a) providing the means for making the unauthorized downloads that infringe Disney's reproduction rights, i.e., Codes sold separately from Combo Packs; and (b) encouraging its customers to use the Codes to make unauthorized download copies. *See Napster*, 239 F.3d at 1022 ("provid[ing] the 'site and facilities' for direct infringement" constitutes material contribution (citation omitted)); *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264 (9th Cir. 1996) ("[m]erely providing the means for infringement may be sufficient" for contributory infringement (citation omitted)); *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (defendant made material contribution to infringement by "provid[ing] machinery or goods that facilitated infringement" (citations omitted)); *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923, 933 (N.D. Cal. 1996) (finding contributory infringement where defendant, among other things, "actively solicited users to upload unauthorized games" and "provided a road map . . . for easy identification of Sega games available for downloading"); Paul Goldstein, Goldstein on Copyright § 8.1 (3d. ed. 2016) ("providing materials or equipment necessary for the infringement" constitutes contributory infringement).

### B. Redbox's Defenses Have Either Been Rejected Or Mooted

The Order considered and rejected Redbox's arguments against liability based on the first-sale defense, 17 U.S.C. § 109(a), and the contention that Code redeemers are not licensees.  Order at 13-15 & n.10, 19-24.  Disney's revisions to the online

-5-

licensing terms have mooted Redbox's only remaining defense to copyright liability, the defense of misuse.

### 1.   The First-Sale Defense Does Not Apply

"Because no particular, fixed copy of a copyrighted work yet existed at the time Redbox purchased, or sold, a digital download code, the first sale doctrine is inapplicable to this case."  Order at 24.[4]

### 2.   A Copy Made By Redeeming A Code Is Subject To A License

Redbox previously argued that a copy made by redeeming a Code is not subject to a license.  This argument was part of Redbox's first-sale defense, which is available only to "owners" of "copies" and not to licensees.  *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1107 (9th Cir. 2010) ("The first sale doctrine does not apply to a person who possesses a copy of the copyrighted work without owning it, such as a licensee."); *accord* 17 U.S.C. § 109(d) (first-sale defense does not "extend to any person who has acquired possession of the copy . . . by rental, lease, loan, or otherwise, without acquiring ownership of it").  Redbox accordingly argued that its customers are owners, not licensees, of the download copies they make.

The Order did not accept Redbox's argument.  First, the Court reasoned that a copy "can[not] be said to exist, let alone transferred, prior to the time that a download code is redeemed and the copyrighted work is fixed onto the downloader's physical hard drive."  Order at 23.  Second, the Court concluded that the terms of use that govern redemption of a Code through RedeemDigitalMovie.com and Movies Anywhere satisfy all the requirements for a license under *Vernor.  Id.* at 14-15.  The website language continues to make clear

_____

[4] The first-sale defense also is inapplicable because it limits only the distribution right, 17 U.S.C. § 106(3), which is not in issue here.  *Id.* § 109(a); *United States v. Moore*, 604 F.2d 1228, 1232 (9th Cir. 1979) ("[T]he owner's other copyright rights remain intact (e.g., publishing or copying).").

1   that users are permitted to redeem Codes to make copies only as authorized

2   licensees and not as owners.[5]  *See Vernor*, 621 F.3d at 1111.

3         Redbox's customers must affirmatively agree to these terms before they can

4   make a download copy by redeeming a Code through RedeemDigitalMovie.com or

5   Movies Anywhere.  *See* Klaus Decl. Ex. A (RedeemDigitalMovie.com); *id.* Ex C

6   (Movies Anywhere).  Those customers are thus licensees and are permitted to make

7   download copies of Disney's copyrighted work only to the extent authorized by the

8   licenses.  *See Oracle*, 879 F.3d at 954; *S.O.S.*, 886 F.2d at 1087.

9                     **3.      Redbox's Misuse Defense Is Moot**

10        The revised terms do not condition redeeming a Code and downloading a

11  movie on a consumer's possessing the physical discs included in the Combo Pack.

12  Klaus Decl. Exs. B, D.  Where, as here, the conduct claimed to constitute misuse has

13  ceased, the copyright owner is free to enforce its copyrights.  *See Metro-Goldwyn-*

14  *Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 994 (C.D. Cal. 2006)

15  ("The plaintiff is free to bring suit to enforce its rights against infringers once the

16  misuse ceases."); *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1108

17  (N.D. Cal. 2002) ("The doctrine does not prevent plaintiffs from ultimately

18  recovering for acts of infringement that occur during the period of misuse.  The

19  _____

20  [5] *See* Klaus Decl. Ex. B (RedeemDigitalMovie.com:  "All digital movie codes are
    owned by Buena Vista Home Entertainment, Inc."; "Digital codes originally

21  packaged in combination disc + code packages may not be sold separately and may
    be redeemed only by an individual who obtains the code in the original disc + code

22  package"; and "You may use digital movie codes to obtain licensed access to digital
    movies only as specifically authorized under these terms and conditions"); *id.* Ex. D

23  (Movies Anywhere:  terms comprise "a license agreement and not an agreement for

24  sale; the "purchase of a license to stream or download . . . does not create an
    ownership interest."; "digital codes are owned by Participating Studios" and may be

25  used only "as specifically authorized under these Movies Anywhere Terms of Use

26  and the terms and conditions of the applicable issuer"; "Digital codes originally
    packaged in combination disc + code packages may not be sold separately and may

27  be redeemed only by an individual who obtains the code in the original combination

28  disc + code package").

                                    -7-

issue focuses on when plaintiffs can bring or pursue an action for infringement, not for which acts of infringement they can recover."); *accord Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 979 n.22 (4th Cir. 1990) ("[The copyright-holder] is free to bring a suit for infringement once it has purged itself of the misuse.").

Should Redbox again assert the defense of misuse to resist the merits of Disney's infringement claim, it will not meet its burden of showing likelihood of success on the merits of that affirmative defense. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) (party opposing preliminary injunction motion bears burden of showing likely success on affirmative defense to infringement).

Copyright misuse is a narrow doctrine that should be applied "sparingly," *Oracle*, 879 F.3d at 957-58 (quoting *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011)).  Because copyright misuse is an equitable doctrine, the defense is properly invoked "only where the [alleged] wrongful acts affect the equitable relations between the parties" and has no application "where plaintiff's misconduct is not directly related to the merits of the controversy between the parties."  *Microsoft Corp. v. Jesse's Computs. & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002) (citation omitted); *Microsoft Corp. v. Comput. Support Servs. of Carolina, Inc.*, 123 F. Supp. 2d 945, 955 (W.D.N.C. 2000) (equitable defense of copyright misuse "requires a defendant to show a nexus between the plaintiff's purported misconduct and the defendant's infringing acts").

While the Order stated that Disney read Ninth Circuit misuse precedent narrowly, Disney respectfully submits that the defense applies only where a copyright holder is "seeking to extend a copyright monopoly to *other products or works*."  *Psystar*, 658 F.3d at 1157 (emphasis added).  The Courts of Appeals have

-8-

found misuse in only four instances—and the Ninth Circuit only once[6]—and all of these decisions found the copyright owner had attempted to extend its limited monopoly to restrict use of (1) competing products or (2) non-copyrightable products, thereby exceeding the scope of its copyright grant.  *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772 (5th Cir. 1999) (license agreement requiring that software be used only in conjunction with non-copyrightable hardware manufactured by the copyright holder); *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516 (9th Cir. 1997) (license agreement prohibiting use of competing coding system); *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597 (5th Cir. 1996) (license agreement requiring that software be used only with non-copyrightable hardware manufactured by the copyright holder); *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990) (noncompetition provision in software license agreement).

Conditions that govern the use of Codes do not restrict the use of competing or non-copyrighted products.  The conditions limit the reproduction of Disney's underlying copyrighted work.  The Ninth Circuit has repeatedly held that the doctrine of copyright misuse does not apply to a copyright holder's use of "conditions to control use of copyrighted material." *Psystar*, 658 F.3d at 1159; *id.* ("[C]ourts have long held that copyright holders may . . . use their limited monopoly to leverage the right to use their work on the acceptance of specific conditions."); *see also Oracle*, 879 F.3d at 957 (same); *Napster*, 239 F.3d at 1027 (copyright holder does not "seek to control areas outside of their grant of monopoly" through efforts to "control reproduction and distribution of their copyrighted works").

---

[6] *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692 (9th Cir. 2015), is not a copyright misuse decision.  The majority did not resolve the case based on the copyright misuse defense.  Judge Wardlaw, concurring in the judgment, would have found misuse based on the copyright holder's attempt to use its copyright to restrict sales of a non-copyrightable product.  *See id.* at 698-705 (Wardlaw, J., concurring in the judgment).

-9-

## II.  ABSENT AN INJUNCTION, DISNEY WILL CONTINUE TO SUFFER IRREPARABLE HARM

Disney's first PI Motion included extensive evidence documenting the irreparable harms Redbox's illegal Code sales are causing Disney in its relationships with licensees and customers.  *See, e.g.*, Marinelli Decl. ¶¶ 11-25; Klaus Decl. Ex. EE (submitting evidence of complaints from Disney licensees); *id.* Ex. DD (customer communications reflecting confusion regarding redemption of Codes purchased from Redbox).

Among other harms, Disney demonstrated that Redbox's conduct interferes with Disney's right to control how it distributes its content.  To date, Disney has chosen not to sell Codes as a freestanding commercial product and instead offers them as a benefit to consumers who choose to buy Combo Packs.  Marinelli Decl. ¶ 22.  Redbox has no right to interfere with that decision and money damages cannot compensate Disney for this interference, *id.  See Oracle Am., Inc. v. Google LLC*, Nos. 2017-1118, 2017-1202, slip op. at 50 (Fed. Cir. Mar. 27, 2018) ("[A] copyright holder has the exclusive right to determine 'when, "whether and in what form to release"' the copyrighted work into new markets, whether on its own or via a licensing agreement." (citation omitted)).

Redbox's sale of Codes also continues to threaten immediate and irreparable harm to Disney's relationships, goodwill, and ability to negotiate with licensees.  Marinelli Decl. ¶¶ 11-15; Klaus Decl. Exs. EE, BB, Marinelli Dep. 24:17-27:16, 34:6-36:2; 162:5-17, 162:24-163:19, 164:8-19, 172:9-12.  By the time Disney filed the first PI Motion, three licensees had already contacted Disney to complain about Redbox's Code sales, one of whom explicitly asked for better license terms to compete with Redbox.  Klaus Decl. Exs. EE, BB, Marinelli Dep. 24:17-27:16, 34:6-36:2.  Janice Marinelli, President of Disney/ABC Home Entertainment and Television Distribution, who has more than 32 years of experience at Disney and 20 years of experience in her current role, testified that (1) Disney depends on its

-10-

goodwill with licensees to promote its content, and (2)  Redbox's conduct will make it "[m]ore difficult" for Disney to negotiate with licensees in the future.  Marinelli Decl. ¶ 14; Klaus Decl. Ex. BB, Marinelli Dep. 162:5-17, 172:9-12.

Since the Order, Disney has released new titles in Combo Packs—*Coco* (2017) and *Thor: Ragnarok* (2017)—for which Redbox is, true to its word, selling Codes.  Klaus Decl. ¶¶ 7-8, Exs. E, F.  With another blockbuster film set for Combo Pack release in about a month—*Black Panther* (2018)—the threat of irreparable damage to Disney's relationships and goodwill with licensees has only become more acute.

The Ninth Circuit and other courts have found evidence of irreparable harm like that established here sufficient to grant injunctive relief.  *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (affirming district court's finding of irreparable harm based on threatened harm to licensee goodwill and loss of negotiating leverage with licensees); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 286 (2d Cir. 2012) (affirming district court's finding of irreparable harm based on, among others, harms to plaintiffs' "negotiating position" and "business model"); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (affirming district court's finding of irreparable harm based on threatened harm to relationships and goodwill with customers); *Am. Broad. Cos. v. Aereo, Inc.*, No. 12-CV-1540, 2014 WL 5393867, at *7 (S.D.N.Y. Oct. 23, 2014) (reaffirming irreparable harm findings based on "loss of control over copyrighted content, and damage to relationships with . . . licensees"); *Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30, 49-50 (D.D.C. 2013) (holding that operation of unauthorized streaming service threatened irreparable harm to copyright holders' relationships, goodwill, and ability to negotiate with licensees and to their ability to control distribution of their copyrighted content); *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1147 (C.D. Cal. 2012) (same); *Warner Bros. Entm't v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1012 (C.D.

1   Cal. 2011) (holding that unauthorized DVD "rental" service threatened irreparable

2   harm to copyright holders' relationships and goodwill with licenses, their "ability to

3   negotiate similar agreements in the future," and their "overall ability to control the

4   use and transmission of their Copyrighted Works"); *MySpace, Inc. v. Wallace*, 498

5   F. Supp. 2d. 1293, 1305-06 (C.D. Cal. 2007) (finding irreparable harm to goodwill

6   with consumers based on evidence of consumer confusion).

7           The evidence of irreparable harm to Disney's relationships with licensees in

8   this case is much stronger than other copyright infringement actions in which courts

9   have granted injunctions.  In *VidAngel*, for example, the Ninth Circuit affirmed an

10  irreparable harm finding based on threatened future harm to relationships with

11  licensees, despite the fact that licensees had not yet even complained about the

12  defendant's conduct.  869 F.3d at 865-66.  By contrast, Disney put forward evidence

13  that licensees have already complained about Redbox's conduct—two of them

14  within hours of the *Deadline Hollywood* article that first alerted Disney and its

15  licensees of Redbox's Code sales—including one who inquired about changes to

16  existing license terms because of Redbox's conduct.  Klaus Ex. EE.  This is strong

17  evidence of actual, concrete harms to licensee relationships.  Disney need not wait

18  until that harm manifests itself in renegotiated license agreements before seeking

19  relief from the Court.  *See VidAngel*, 869 F.3d at 865-66 (rejecting argument that

20  threatened harms to studio's negotiating position with licensees were "vague and

21  speculative"); *FilmOn X*, 966 F. Supp. 2d at 50 (rejecting contention that harm to

22  negotiating leverage with licensees was "pure speculation").  In addition, Disney's

23  uncontroverted evidence of customer confusion demonstrates that Redbox's conduct

24  is already and will continue to harm Disney's goodwill and relationships with

25  customers.  Klaus Ex. DD (customer communications reflecting confusion regarding

26  redemption of Codes purchased from Redbox).

27          Disney need only show that "irreparable injury is *likely* in the absence of an

28  injunction."  *VidAngel*, 869 F.3d at 865 (quoting *Winter*, 555 U.S. at 22).  Disney's

-12-

1  evidence easily clears that hurdle.  Redbox's conduct is causing and will continue to

2  cause irreparable harm by interfering with Disney's control over the distribution of

3  its content and by causing damage to Disney relationships and goodwill with

4  licensees and customers, among other harms, absent intervention by this Court.

5  **III.    THE BALANCE OF HARDSHIPS TIPS DECISIVELY FOR DISNEY**

6          The irreparable harm to Disney absent an injunction far outweighs the impact

7  to Redbox of being enjoined from its illegal activities.

8          Redbox offered two arguments on the balance of hardships in opposing the

9  first PI Motion, neither of which has merit.

10          First, Redbox claimed it would be harmed by an injunction because it had

11  spent $700,000 to launch its Code sale business.  First PI Opp. at 25 (Dkt. 30).

12  Redbox cannot complain of "financial hardship from ceasing infringing activities."

13  *VidAngel*, 869 F.3d at 867; *see also Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d

14  1330, 1338 (9th Cir. 1995), *superseded on other grounds by* 17 U.S.C. § 117(c)

15  (defendant "cannot complain of the harm that will befall it when properly forced to

16  desist from its infringing activities").  Even if Redbox's claimed financial hardship

17  were relevant, a temporary delay in recouping $700,000 does not imperil Redbox's

18  "billion dollar plus business."  Klaus Ex. CC, Smith Dep. 68:14-15.  Courts have

19  granted injunctions when the stakes are much higher, including when an injunction

20  might put the defendant out of business.  *See Blackberry Ltd. v. Typo Prods. LLC*,

21  No. 14-CV-00023-WHO, 2014 WL 1318689, at *12 (N.D. Cal. Mar. 28, 2014)

22  ("[T]he fact that an injunction might put an alleged infringer out of business 'cannot

23  justify denial of that injunction.'" (quoting *Windsurfing Int'l Inc. v. AMF, Inc.*, 782

24  F.2d 995, 1003 n.12 (Fed. Cir. 1986))); *A&M Records, Inc. v. Napster, Inc.*, 114 F.

25  Supp. 2d 896, 925-26 (N.D. Cal. 2000) ("The court cannot give much weight to

26  defendant's lament that the requested relief will put it out of business. . . . the

27  business interests of an infringer do not trump a rights holder's entitlement to

28

copyright protection."), *aff'd in part and reversed in part on other grounds,* 239
F.3d 1004 (9th Cir. 2001).

Second, Redbox claimed that an injunction in these proceedings would
"delay" its alleged "entry into the market for selling digital downloads."  First PI
Opp. at 25.  There is no factual basis for that argument.  A preliminary injunction
would not delay Redbox's "entry into the market for selling digital downloads"
because Redbox has already entered that market:  It sells digital downloads of other
studios' movies through "Redbox On Demand."  Declaration of Galen Smith ¶ 4
(Dkt. 31).  Moreover, Redbox is not selling digital downloads of Disney movies; it
is selling Codes.  Redbox offers no explanation why temporarily ceasing sales of the
one product would have any effect on the other, and the record evidence proves it
would not.  Klaus Decl. Ex. CC, Smith Dep. 90:1-4 (Redbox's CEO admits selling
Codes has no effect on the Redbox On Demand library); *id.*159:5-9 (Redbox's CEO
says the company will offer Redbox On Demand regardless of what happens in this
lawsuit); *id.* 94:9-11 (Redbox's CEO believes Redbox On Demand can be
successful without Disney content).

## IV.    A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

This Court's initial question about Disney's ability to demonstrate that an
injunction would be in the public interest was based on the prior online licensing
terms.  Order at 18 n.16.  Disney has addressed that concern by changing the terms.

Ninth Circuit precedent makes clear that the public interest here is in
upholding copyright protection.  Specifically, "'the public has a compelling interest
in protecting copyright owners' marketable rights to their work and the economic
incentive to continue creating television programming' and motion pictures."
*VidAngel*, 869 F.3d at 867 (citations omitted); *see also Eldred v. Ashcroft*, 537 U.S.
186, 212 n.18 (2003) ("[T]he economic philosophy behind the [Copyright] [C]lause
. . . is the conviction that encouragement of individual effort by personal gain is the

-14-

1  best way to advance public welfare through the talents of authors and inventors."

2  (citation omitted)).

3      Redbox has argued that the public has an interest in paying less for Codes.

4  First PI Opp. at 25.  That logic would defeat an injunction any time a copyright

5  holder seeks to restrain an infringer who is undercutting the prices of licensed

6  offerings.  That is not the law and certainly not the right result here.  As Ms.

7  Marinelli explained:  "If consumers come to expect that they can buy unauthorized

8  digital downloads for below market prices, this could have a permanent and

9  irreparable negative impact on consumers' expectations and relationships with both

10  Disney and its authorized licensees.  Consumers will come to believe that below

11  market pricing for a digital copy of a movie from an unauthorized service is

12  legitimate, adversely affecting consumers' perception of authorized services."

13  Marinelli Decl. ¶ 19.

14      Allowing Redbox to continue flouting the law is not in the public interest.

15  **V.   MINIMAL SECURITY SHOULD BE REQUIRED**

16      Security in the amount of $50,000—an amount that Redbox did not contest in

17  proceedings on the first PI Motion—is appropriate.  *See Zediva*, 824 F. Supp. 2d at

18  1015 (setting bond at $50,000).

19                              **CONCLUSION**

20      Redbox is knowingly encouraging its customers to infringe Disney's

21  reproduction rights.  The basis for any misuse defense has been eliminated and the

22  Court has rejected Redbox's other defenses.  Accordingly, the Court should grant

23  Disney's motion for a preliminary injunction.

24  DATED:  April 9, 2018                 MUNGER, TOLLES & OLSON LLP

25

26

27  By:  _____*/s/ Kelly M. Klaus*_____

     KELLY M. KLAUS

28  Attorneys for Plaintiffs

-15-