**ROBINS KAPLAN LLP**
Roman M. Silberfeld (SBN 62783)
RSilberfeld@RobinsKaplan.com
Breton A. Bocchieri (SBN 119459)
BBocchieri@RobinsKaplan.com
Michael A. Geibelson (SBN 179970)
MGeibelson@RobinsKaplan.com
Daniel L. Allender (SBN 264651)
DAllender@RobinsKaplan.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552–0130
Facsimile: (310) 229–5800

**AXINN, VELTROP & HARKRIDER LLP**
Michael L. Keeley (*admitted pro hac vice*)
mkeeley@axinn.com
Donald W. Hawthorne (*admitted pro hac vice*)
dhawthorne@axinn.com
Rachel Johanna Adcox (*admitted pro hac vice*)
radcox@axinn.com
Jarod G. Taylor (*admitted pro hac vice*)
jtaylor@axinn.com
950 F Street, NW
Washington, D.C. 20004
Telephone: (202) 912–4700
Facsimile: (202) 912–4701

*Attorneys for Defendant*
Redbox Automated Retail, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC., *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> REDBOX AUTOMATED RETAIL, LLC, <br><br> Defendant. | Case No. 2:17-cv-08655 - DDP (AGRx) <br> Hon. Dean D. Pregerson <br><br> **DEFENDANT REDBOX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Hearing Date:   June 18, 2018 <br> Hearing Time:   10:00 a.m. <br> Complaint filed: November 30, 2017 <br> Trial Date:   Not Set |

# TABLE OF CONTENTS

Preliminary Statement ...................................................................................................1

Allegations of the Complaint ........................................................................................3

Argument .......................................................................................................................4

I. DISNEY FAILS TO PLEAD CONTRIBUTORY COPYRIGHT INFRINGEMENT. ..........................................................................................5

    A. Consumers, Including Redbox, Purchase Codes Free of Any Restrictions on Resale or Use. ...............................................................6

    B. Disney's Purported After-the-Fact License Condition Is Unenforceable. ........................................................................................9

        1. Disney's Alleged License Condition Is Unconscionable. ..........10

        2. Disney's Attempt to Impose a License Condition After Consumers Purchase a Code Violates the "Pre-Existing Duty" Rule. .............................................................................................13

II. THE FAC SHOULD BE DISMISSED BECAUSE IT FAILS TO ELIMINATE DISNEY'S COPYRIGHT MISUSE. ......................................14

Conclusion ..................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A & M Produce Co. v. FMC Corp.*,
   135 Cal. App. 3d 473 (1982) ............................................................................ 11

*Ariz. Cartridge Remanufacturers Ass'n Inc. v. Lexmark Int'l Inc.*,
   421 F.3d 981 (9th Cir. 2005) .................................................................... 1, 3, 10

*Arnett Facial Reconstruction Courses, Inc. v. Patterson Dental Supply, Inc.*,
   No. CV 11-06929 CBM (EX), 2012 WL 13012429
   (C.D. Cal. Aug. 10, 2012) ................................................................................... 7

*Ellis v. McKinnon Broad. Co.*,
   18 Cal. App. 4th 1796 (1993) ........................................................................... 12

*Graham v. Scissor-Tail, Inc.*,
   623 P.2d 165 (Cal. 1981) ............................................................................ 10, 11

*Hill v. Gateway 2000, Inc.*,
   105 F.3d 1147 (7th Cir. 1997) ............................................................................ 8

*Ilkhchooyi v. Best*,
   37 Cal. App. 4th 395 (1995) ....................................................................... 10, 12

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. 519 (2013) ............................................................................................ 7

*Lima v. Gateway, Inc.*,
   886 F. Supp. 2d 1170 (C.D. Cal. 2012) ...................................................... 11, 12

*Moore v. Bartholomae Corp.*,
   69 Cal. App. 2d 474 (1945) .............................................................................. 14

*Norcia v. Samsung Telecomm. Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) .................................................................. 2, 8, 13

*Perdue v. Crocker Nat'l Bank*,
   702 P.2d 503 (Cal. 1985) ............................................................................ 10, 11

*Rincon Band of Luiseno Mission Indians of Rincon Reservation v. Schwarzenegger*,
   602 F.3d 1019 (9th Cir. 2010) .................................................................................. 14

*Sylvia Landfield Tr. v. City of Los Angeles*,
   729 F.3d 1189 (9th Cir. 2013) .............................................................................. 4, 5

*Tompkins v. 23andMe, Inc.*,
   2014 WL 2903752 (N.D. Cal. June 25, 2014) ........................................................ 13

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ........................................................................ 10, 13

**Statutes**

Cal. Civ. Code § 1458 ................................................................................................... 7

Cal. Civ. Code § 1605 ................................................................................................. 14

Cal. Civ. Code § 1670.5(a) .................................................................................. 10, 11

**Other Authorities**

Restatement (Second) of Contracts (1981) ................................................................. 11

Uniform Commercial Code ..................................................................................... 7, 11

3 Williston on Contracts § 7:36 (4th ed.) ................................................................... 14

**Preliminary Statement**

At the preliminary injunction hearing, the Court expressed concern about "how to make sure companies don't get sloppy with how they sell things, so it's clear what all the terms are," and "how to avoid unpredictability in the law when you purchase something so that you know up front what it is you're purchasing . . . ." (Hr'g Tr. 61-62 (Feb. 5, 2018).) Disney's First Amended Complaint ("FAC") confirms that the Court's concerns were well-placed. In this period of transition from a brick-and-mortar retail environment to an online digital world, it is all the more important for companies like Disney to respect the contractual requirements of each environment in which they transact. The FAC demonstrates that Disney—in seeking to require a consumer to agree to additional, online license terms in order to obtain the benefit of a transaction that she has already completed at the point of sale in a brick-and-mortar transaction—has failed to do so.

Under certain circumstances not present here, click-through licenses are recognized as valid in this circuit when a consumer initiates a transaction online. But consumers are not originating a new transaction online when they visit one of Disney's websites to redeem the digital code they have previously purchased in one of Disney's Combo Packs or from another party who has done so. The relevant transaction has already occurred offline in the brick-and-mortar world. As the Ninth Circuit held in *Arizona Cartridge v. Lexmark*, in a brick-and-mortar transaction, more than the mere retail purchase of a product with fine print purporting to limit resale is required to create a binding limitation on alienation. And as this Court has already recognized, Disney did not meet the *Arizona Cartridge* standard when it sold Combo Packs at retail. (*Id.* at 8-9.) The FAC does not attempt to plead compliance with the *Arizona Cartridge* standard; indeed, Disney's decision to drop its claim for breach of a contract formed at the point of sale of the Combo Pack limiting resale reflects its concession that no such contract exists. Disney made its

1

REDBOX'S MEMORANDUM
I/S/O MOTION TO DISMISS FAC

choice to sell digital movies in the brick-and-mortar world—it accordingly must abide by the traditional rules that apply there.

Disney's amended complaint reflects an effort to back out of completed brick-and-mortar sales by springing after-the-fact website license terms on consumers who never assented at the time of purchase. These consumers never agreed that the codes they already acquired are "not authorized for redemption if sold separately." Such after-the-fact website license terms are no more than "in-the-box" contracts, which, as the Ninth Circuit recently held in *Norcia v. Samsung Telecommunications America, LLC*, are not enforceable in this circuit.

Nor is Disney's failure to obtain consumers' assent at the point of sale remedied by the website "licenses" that Disney compels the owners of codes to click through in order to obtain a digital download. To the extent that click-through agreements obtained under these circumstances are viewed as contracts at all, they are an unenforceable effort to impose unconscionable *ex post* terms. Any such after-the-fact effort to require a consumer to accept new obligations to obtain a good to which she is already entitled would be unconscionable. It is self-evidently more unconscionable to inform a consumer, when she arrives at a destination (physical or digital) to retrieve goods, that she must acknowledge that she has no right to the goods she has purchased, and for which she has already paid.

Disney's website licenses are also unenforceable under the "pre-existing duty" rule, which prevents a party that is obligated to perform, like Disney after the sale of a digital code, from withholding performance in order to extract additional concessions.

Because Disney's website licenses are unenforceable to the extent that they attempt to preclude resale of elements of Combo Packs, they cannot be a basis for a viable claim of infringement against any consumer who has purchased Codes sold in Combo Packs from Redbox, or any other party. Because that underlying claim of infringement is not viable, neither is Disney's claim against Redbox for contributory

2

infringement. And finally, the website licenses continue to burden consumers' ability to sell separately the physical discs contained in the Combo Packs, and Disney has therefore failed to cure its copyright misuse.

Disney may be entitled to create click-through licenses for transactions that originate as online sales. But as long as it continues to sell products in a brick-and-mortar retail environment, it has to abide by the legal principles that govern such transactions. This means it must observe procedures like those described in *Arizona Cartridge* that are sufficient to provide objective manifestations of offer and acceptance of those terms. Because Disney has concededly failed to do so here, its First Amended Complaint must be dismissed.

**Allegations of the Complaint**

Disney Enterprises, Inc., Lucasfilm Ltd. LLC, and MVL Film Finance LLC (collectively, "Disney") hold copyrights in certain movies at issue. FAC ¶ 10. Disney (or its affiliates) distribute those movies through, among other means, a code that provides access to a digital copy (a "Code"). *Id.* at ¶ 1. Consumers access the digital copy by entering the Code on websites including RedeemDigitalMovie.com and Movies Anywhere (the "Websites"). *Id.* at ¶ 13.

Disney distributes Codes in "Combo Packs" that generally contain copies of the movie on DVD, Blu-ray, or 4K/UHD discs in addition to a Code. *Id.* at ¶ 14. Disney sells the Combo Packs as single retail units at wholesale prices, and retailers resell the Combo Packs to consumers. *Id.* at ¶¶ 14-15. Redbox buys Combo Packs and rents or sells the discs and sells Codes to consumers through its kiosks. *Id.* at ¶¶ 29-30.

The FAC does not allege that a contract, in any form, exists between Disney (or any of its affiliates or agents) and purchasers at the point that Combo Packs are sold. The FAC does not allege that Disney—or anyone else—communicates any enforceable restrictions on the use or resale of the Codes at the point of sale of Combo Packs. The FAC does not allege anything about the retail transaction in

which Combo Packs are sold that distinguishes it from any other ordinary retail purchase that consumers make every day, at McDonalds, the supermarket, or Walmart.

Nevertheless, the FAC alleges that, after the consumer has paid for a Combo Pack, including the Code, Disney can prevent resale of Codes through the imposition of license terms when a consumer attempts to use a Code to obtain a digital copy of a movie. According to the FAC, terms listed on the Websites state: "By redeeming one of these codes, you are representing that you, or a member of your family, obtained the code in an original disc + code package and the code was not purchased separately. Your representation is a condition of redemption of the code and of your obtaining a license to access a digital copy of the movie." *Id.* at ¶¶ 22, 24-25. The FAC alleges that in order to obtain a digital copy of a movie a consumer has purchased, she must agree to these terms (the "Website Terms") and make this representation. *Id.* at ¶ 26.

The FAC alleges that consumers who have purchased Codes from sources other than a Combo Pack and obtained digital copies of movies through use of those Codes from the Websites necessarily violate the representation required of them by the Websites. According to the FAC, such consumers violate the Website Terms and therefore infringe Disney's copyrights by viewing the digital movies they obtain from the Websites. The FAC alleges that Redbox contributes to that alleged infringement by selling Codes to consumers with the knowledge that they will use the Codes to view digital movies without complying with the Website Terms. *Id.* at ¶ 40-41.

### Argument

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Because Disney has not pled claims in the FAC that state a claim for infringement by consumers who use Codes purchased from buyers of Combo Packs to obtain a digital copy of a movie, Disney's claim for contributory infringement premised on such unsupported allegations of consumer infringement must be dismissed.

## I. DISNEY FAILS TO PLEAD CONTRIBUTORY COPYRIGHT INFRINGEMENT.

Disney's claim against Redbox for contributory copyright infringement is based on the allegation that consumer purchasers of Codes from Redbox violate the Website Terms when such consumers—in order to obtain access to a digital copy for which they have already paid—are required to check a box on the Websites indicating that the consumer obtained the Code directly in a Combo Pack. The FAC alleges that consumers' conduct in checking that box and then viewing a digital movie, when they have purchased Codes from others rather than as part of a Combo Pack, infringes Disney's copyrights, and that Redbox contributes to that purported infringement by selling Codes.

Disney's contributory infringement claim fails because there was no underlying infringement to which Redbox could "contribute." An infringement claim against consumers who purchased a Code otherwise than in a Combo Pack necessarily relies on the claim that Codes are sold pursuant to binding contracts that prevent their resale. Under the allegations of the FAC, that is not the case. The FAC alleges that the Codes were sold as part of a Combo Pack, with no alleged restrictions on their use. The Court has already found that Disney lacks a basis to allege such a binding contract when a Combo Pack is sold—which explains why Disney, in its FAC, dropped its claim for breach of a point-of-sale contract.

Disney's fallback argument is that even if the Codes were initially sold with no limitations on their resale, such limitations were newly imposed by the Website Terms that consumers were required to accept to obtain access to the digital movies that they had previously purchased. That claim is barred by law and common sense. Attempts to impose further conditions to permit a party to obtain delivery of goods for which it has paid, imposed by the party in possession of the goods, are unenforceable under many well-recognized principles, including unconscionability, duress, and the "pre-existing duty" doctrine. Those principles are all the more applicable in this situation, when the "further conditions" that Disney is attempting to impose would deny consumers the digital copy they have purchased already "free and clear" of conditions.

Because, under the allegations of the FAC, there is no viable contractual obligation on consumers that prevents sale of Codes or use of Codes purchased from others, Disney has alleged no infringement claim against Redbox's customers. Accordingly, Redbox cannot be alleged to have contributed to such non-existent "infringement," and the sole claim against it in the FAC should be dismissed with prejudice.

**A. Consumers, Including Redbox, Purchase Codes Free of Any Restrictions on Resale or Use.**

In its Order of February 20, 2018, the Court held that: "Disney has failed to demonstrate a likelihood of success on the merits of its breach of contract claim" alleging a purported contract formed at the point of sale of a Combo Pack that could limit the resale of Codes. (Op. 13.) The Court reached this conclusion based on its conclusion that "whether considering the Combo Pack language as a shrink wrap or as a box-top license, Disney has not demonstrated a likelihood of success on the merits" of its claim that a contract was made at the point of sale. (Op. 10.)

In the face of that holding, Disney has dropped its claim that Redbox or any other customer has violated a purported "contract" at the point of sale of a Combo

Pack. Indeed, the FAC does not allege that *any* contract is created when a retail purchaser, including Redbox, purchases a Combo Pack at retail.

Based on the allegations of the FAC, therefore, the sale of a Combo Pack and whatever it contains—including "something akin to an option to create a physical copy at some point in the future" (Op. 23-24)—is not subject to any contractual limitation on the resale of what was included in the Combo Pack. The FAC does not allege any such limitation applicable at the point of sale of the Combo Pack. For that reason, under applicable law, the Code sold in a Combo Pack can be resold without limitation. Disney has previously contended that the purchase of a Combo Pack at retail is a sale under the Uniform Commercial Code. (Pls.' Opp'n Mot. Dismiss 6-7, Dkt. No. 68 (Feb. 12, 2018).) But whether viewed as a good subject to the Uniform Commercial Code or a contractual obligation, a Code that is sold with no contractual limitations on its alienability can presumptively be transferred to others without limitation. *See, e.g.*, *Kirtsaeng v. John Wiley & Sons, Inc.,* 568 U.S. 519, 539 (2013) ("American law . . . has generally thought that competition, including freedom to resell, can work to the advantage of the consumer."); *Arnett Facial Reconstruction Courses, Inc. v. Patterson Dental Supply, Inc.*, No. CV 11-06929 CBM (EX), 2012 WL 13012429, at *5 (C.D. Cal. Aug. 10, 2012) (citing Restatement (Second) of Contracts § 317 for the proposition that "contractual rights are generally assignable" and holding that license agreement was properly assigned without consent of licensor where license was silent on assignability); Cal. Civ. Code § 1458 ("A right arising out of an obligation is the property of the person to whom it is due, and may be transferred as such.").

Disney's principal response is to argue that even though consumers obtain rights to digital movies free and clear when they purchase Codes, consumers' rights are limited by the Website Terms to which they agree long after their purchase of a Combo Pack. FAC ¶¶ 2, 40. The claim that the Website Terms could impose new post-purchase obligations through a contract created when consumers obtain movies

through the Websites is discussed below. It is clear that the Website Terms cannot alter the terms on which purchasers acquired Combo Packs *at retail*, as the Ninth Circuit has recently held in *Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017).

The plaintiff in *Norcia* purchased a cell phone in a package that stated: "Package Contains . . . Product Safety & Warranty Brochure." The brochure contained in the package in turn contained a term mandating arbitration. The court analyzed the arbitration obligation as an "in-the-box" term, as the term was disclosed to the consumer only after purchase. The court surveyed the case law for support for in-the-box contracts, and found none in this circuit or under California law. Noting "the absence of support from California courts," the court declined "to conclude . . . that the practicalities of consumer transactions require the enforcement of in-the-box contracts . . . ." The court instead recognized "that silence alone does not constitute assent" to terms disclosed after purchase.[1] In so holding, the Ninth Circuit expressly rejected the Seventh Circuit's holding in *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148-49 (7th Cir. 1997), which recognized in-the-box contracts as enforceable provided that the consumer is given the right to return the product if she rejects the in-the-box terms. *Norcia*, 845 F.3d at 1288-90.

*Norcia* demonstrates that Disney cannot add new terms to the obligations that purchasers of Combo Packs assume at the point of purchase through requirements imposed on the Websites. Disney's license conditions are not disclosed to consumers until after purchase, just as in *Norcia*. And just as in *Norcia*, Disney does not, and cannot, allege that purchasers of Combo Packs, including Redbox, assent to any restriction on resale of Codes when they purchase a Combo Pack.

---

[1] The *Norcia* Court in fact questioned whether even shrink-wrap contracts that do provide notice that the customer will be bound by additional terms upon opening the box are enforceable in California. *Norcia*, 845 F.3d at 1286 n.1.

8

REDBOX'S MEMORANDUM I/S/O MOTION TO DISMISS FAC

Redbox (like other consumers) therefore obtains the Codes free of any restraint on resale or use.

### B. Disney's Purported After-the-Fact License Condition Is Unenforceable.

Having abandoned its claim that an agreement entered into at the point of sale of a Combo Pack is breached when Codes included in a Combo Pack are resold to others, Disney's claim of infringement now rests entirely on its contention that Redbox's customers infringe because they violate an obligation not to have purchased Codes from others, which is imposed for the first time when those customers visit the Websites to obtain the digital copies they have purchased. The fallacy in that proposition speaks for itself: it is far too late to attempt to impose a limitation on alienability after a sale has already occurred, when the purchaser goes to a Website to retrieve the digital copy it has purchased.

To the extent that the Websites require consumers to click through a license agreement in order to obtain the digital copies they have purchased, and in so doing represent that they did not purchase the Code from others, that coercive contract term—which would deny consumers access to a digital movie they already purchased, free and clear of any limitations—is unenforceable. A contract term that requires a consumer to represent that she has not purchased a Code from others—where the Code was sold with no enforceable limitations on resale—that a consumer may first see only after she has paid to acquire the Code from others is obviously unconscionable, and therefore unenforceable. Such a contract term also violates the pre-existing duty rule, as it seeks to impose an additional obligation to obtain an item already purchased with no additional consideration from Disney—indeed, with the imposition of a term with which no one who purchased the Code from others could comply.

Disney's abandonment of its point-of-sale contract claim exposes the fundamental flaw in its approach to marketing Codes. It cannot make up for its

admitted failure to follow *Arizona Cartridge* standards for restricting resale at the point of sale by imposing after-the-fact terms when a consumer seeks to redeem a Code to obtain a digital movie. Because consumers violate no enforceable license term when they redeem Codes—whether they have purchased Codes from others or not, and whatever they represent about the source of their Codes—Disney has no viable copyright claim against consumers who use the Websites to redeem Codes they have purchased from Redbox or others. And because Disney has no infringement claim against Redbox's customers, its contributory infringement claim against Redbox should be dismissed.

### 1. Disney's Alleged License Condition Is Unconscionable.

A license term that would require a consumer to represent that she has not purchased a Code from others in order to obtain access to a digital movie—imposed after the consumer may have already purchased that Code from others—is unconscionable under California law. "Under California law, a state court may refuse to enforce a provision of a contract if it finds that the provision was 'unconscionable at the time it was made.' Cal. Civ. Code § 1670.5(a). Courts may find a contract as a whole 'or any clause of the contract' to be unconscionable. *Id.*" *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016). The determination of unconscionability is a question of law that is left to the Court. *Ilkhchooyi v. Best*, 37 Cal. App. 4th 395, 411 (1995).

There are two tests for unconscionability used by California courts, although, as the California Supreme Court has stated, "[b]oth pathways should lead to the same result." *Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 511 n.9 (Cal. 1985). Under the "adhesion" test, contract terms are unconscionable and thus unenforceable if they: (1) appear in contracts of adhesion, and (2) "do[] not fall within the reasonable expectations of the . . . 'adhering' party," or are "unduly oppressive." *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 172-73 (Cal. 1981). Under the "procedural/substantive" test, "unconscionability has both a 'procedural'

REDBOX'S MEMORANDUM
I/S/O MOTION TO DISMISS FAC

and a 'substantive' element." *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).[2] "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170, 1181 (C.D. Cal. 2012) (quoting *Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012)). Disney's purported post-purchase Website Terms, insofar as they purport to bar resale of Codes after such resales have occurred, are unconscionable under either standard.[3]

Under the "adhesion" test, the element of adhesion is present: Disney purports to impose the license term requiring a representation that the Code was not purchased without allowing for any negotiation, after the consumer has come to a Website to obtain her digital movie. The "reasonable expectation" or "unduly oppressive" elements are also easily satisfied. Prohibiting an owner of a Code from using the Code to obtain a digital movie purchased with no enforceable limitations on its use is necessarily contrary to anyone's "reasonable expectations." A license condition requiring a consumer to certify that she had not purchased a Code from others, even if she had done so, where the Code was originally sold with no enforceable restrictions on resale, is also quite evidently "unduly oppressive." Were such a provision enforced, it would deprive consumers entirely of the value of

---

[2] The test enunciated in *Graham* arose from precedent predating the enactment of California Civil Code § 1670.5(a), while the test enunciated in *A & M Produce* adheres more closely to precedent under the Uniform Commercial Code, from which California Civil Code § 1670.5(a) was borrowed. *Perdue*, 702 P.2d at 511 n.9. The Supreme Court of California has not expressed a preference for either test. *See, e.g., id.*

[3] Additionally, such contact terms would be void as entered under duress. *See* Restatement (Second) of Contracts § 175, cmt. b, illus. 3 (1981) (duress occurs where "A, with whom B has left a machine for repairs, makes an improper threat to refuse to deliver the machine to B, although B has paid for the repairs, unless B agrees to make a contract to have additional repair work done").

Codes that they had purchased, under circumstances where there were no legally enforceable restriction on their resale. Courts routinely find contracts creating such a forfeiture to be unconscionable and unenforceable. *See, e.g., Ellis v. McKinnon Broad. Co.*, 18 Cal. App. 4th 1796 (1993) (reversing trial court and finding unconscionable a "forfeiture provision" denying salesperson commission on advertisements he sold if payment was not received before the salesperson quit); *Ilkhchooyi*, 37 Cal. App. 4th 395 (affirming unconscionability of provision requiring lessee to pay lessor 75% of any profit obtained from assignment of lease).

Under the "procedural/substantive" test, the Website Terms requiring a representation that a Code has not been purchased from others are procedurally unconscionable. As the Terms permit no negotiation, they are contracts of adhesion; but that is not all. There is a particularly "high degree of procedural unconscionability present" here, because Codes are initially sold in Combo Packs with no limitations on their resale. There is therefore no legal grounds to deny purchasers of Codes—whether in Combo Packs or from others—access to the digital movies they purchased. Any reasonable consumer would be justifiably surprised that Disney would illegally attempt to do so. *Lima*, 886 F. Supp. 2d at 1181-82. Such "indicia of . . . surprise" by a "hidden term," as well as the fact that consumers do not have any real choice to "take or leave" Disney's terms, underscore that the Website Terms have a "high degree" of procedural unconscionability. *See id.*

Accordingly, "less evidence" of substantive unconscionability is required to demonstrate that the Website Terms are unenforceable—a standard that is easily met here. *Id.* at 1181. The "substantive unconscionability" prong turns on whether "a provision in an adhesion contract . . . does not fall within the reasonable expectations of the weaker or 'adhering' party." *Id.* at 1183. It is difficult to imagine any provision that would fall farther outside the reasonable expectations of a visitor to one of the Websites than that she could not obtain a movie for which she

had already paid.  The "substantive unconscionability" prong is therefore met here, based on the allegations of the FAC.

A recent Ninth Circuit case applied the "procedural/substantive" test under similar circumstances. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016). The plaintiff there had purchased and paid for a genetic testing kit and was only presented with terms of service, which included an arbitration clause, later on, when the customer subsequently opened an account to receive her results, at which time she entered a click-through acknowledging agreement to the terms of service. *Id.* at 1020.  Even before *Norcia,* the district court had no difficulty in finding that this transaction was procedurally unconscionable, a decision that the defendant did not appeal. *Id.* at 1024 n.2; *see also Tompkins v. 23andMe, Inc.,* 2014 WL 2903752, at *15 (N.D. Cal. June 25, 2014).  The Ninth Circuit found that neither the presence of an arbitration clause nor its particular terms were substantively unconscionable.  840 F.3d at 1020.  By contrast, it is self-evident that terms that preclude the possessor of a digital code from accessing the digital movie she has purchased would be an "overly harsh or one-sided result[]," and hence substantively unconscionable as well.  *Id.* at 1023 (quoting *Sanchez v. Valencia Holding Co., LLC,* 353 P.3d 741 (Cal. 2015)).

Accordingly, based on the allegations of the FAC, the requirement that Website visitors who seek to use a Code to obtain a digital movie represent that they have not purchased that Code separately from a Combo Pack is unconscionable and unenforceable.

### 2. Disney's Attempt to Impose a License Condition After Consumers Purchase a Code Violates the "Pre-Existing Duty" Rule.

Under the "pre-existing duty" doctrine, a party to a contract who is already obligated to perform may not extract additional concessions for its performance without offering some consideration in addition to the performance of its pre-

existing contractual duties. *See, e.g.*, Cal. Civ. Code § 1605 (excluding from definition of "consideration" any "prejudice" that the promisor is "at the time of consent lawfully bound to suffer"); 3 Williston on Contracts § 7:36 (4th ed.); *Rincon Band of Luiseno Mission Indians of Rincon Reservation v. Schwarzenegger*, 602 F.3d 1019, 1037 (9th Cir. 2010) ("It is elementary law that giving a party something to which he already has an absolute right is not consideration to support that party's contractual promise." (quoting *Salmeron v. United States,* 724 F.2d 1357, 1362 (9th Cir.1983))); *Moore v. Bartholomae Corp.*, 69 Cal. App. 2d 474, 478 (1945) ("It is likewise settled that neither a promise to perform a duty nor the performance of a duty constitutes a consideration sufficient to support a new contract"). Where such further consideration from the obligor is absent, a party is obliged to perform its pre-existing duties, and its demands for further consideration to do so are unenforceable.

But Disney is seeking to do just that. Disney was under a pre-existing duty to provide digital movies to consumers who provided Codes to the Websites. Disney's attempt to impose further obligations on consumers to obtain the digital movies (which consumers who purchase Codes from others cannot meet) violates Disney's pre-existing duty to provide the digital movies, and does so without providing further consideration to consumers. Indeed, no "further consideration" could compensate consumers for new terms that deprive them entirely of the right to access the digital movie for which they paid.

## II. THE FAC SHOULD BE DISMISSED BECAUSE IT FAILS TO ELIMINATE DISNEY'S COPYRIGHT MISUSE.

The Court held in its decision on Disney's initial application for a preliminary injunction that the "improper leveraging of Disney's copyright in the digital content to restrict secondary transfers of physical copies . . . constitutes copyright misuse." (Op. 18.) As explained in Redbox's opposition to Disney's renewed motion for a preliminary injunction, Disney's new Website Terms fail to cure Disney's misuse because they continue to penalize anyone who attempts to exercise the right to sell

the physical discs separately from the Codes. (Dkt. No. 94 at 12-19.) That reasoning is just as applicable on a motion to dismiss, and Redbox therefore adopts that argument here and accordingly urges the Court to dismiss the FAC on that ground.

## Conclusion

Disney's concession that no binding contract obliges purchasers of Combo Packs not to resell Codes dooms the FAC. Disney is reduced to arguing that it can sell Codes in Combo Packs with no limitation on their resale, and then, after it has been paid for the retail sale, can prohibit use of the Code unless consumers agree to the additional term that Codes cannot be resold—even though some consumers will at that point have already purchased Codes, and would thus be conceding that the Codes they have purchased are worthless.

Disney's position is facially untenable. Any contract term requiring consumers to certify that they have not purchased Codes separately from Combo Packs is unconscionable, violates the pre-existing duty rule, and is on both grounds unenforceable. Because Disney's purported infringement claim against Redbox's customers is based on its alleged violation of these unenforceable contract terms, that infringement claim fails under the allegations of the FAC. Because Disney has no viable infringement claim against Redbox's customers, its claim against Redbox for contributory infringement should be dismissed with prejudice.

| | | |
|---|---|---|
| 1 | DATED: May 9, 2018 | Michael L. Keeley |
| 2 | | AXINN, VELTROP & HARKRIDER LLP |
| 3 | | By: /s/ Michael L. Keeley |
| 4 | | Michael L. Keeley |
| 5 | | Michael A. Geibelson |
| 6 | | ROBINS KAPLAN LLP |
| 7 | | |
| 8 | | Attorneys for Defendant |
| | | REDBOX AUTOMATED RETAIL, LLC |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES