O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DISNEY ENTERPRISES, INC.;       )   Case No. CV 17-08655 DDP (AGRx)
BUENA VISTA HOME               )
ENTERTAINMENT, INC.;           )
LUCASFILM LTD., LLC, MVL       )
FILM FINANCE LLC,              )   **ORDER GRANTING PLAINTIFFS' MOTION**
                               )   **FOR PRELIMINARY INJUNCTION**
                 Plaintiff,    )
                               )
        v.                     )
                               )
REDBOX AUTOMATED RETAIL,       )   [Dkt. 86, 116]
LLC,                           )
                               )
                 Defendants.   )
_____)

    Presently before the court is Plaintiffs Disney Enterprises,

Inc., Buena Vista Home Entertainment, Inc., Lucasfilm Ltd., LLC,

and MVL Film Finance LLC (collectively, "Disney")'s Motion for

Preliminary Injunction.  Having considered the submissions of the

parties and heard oral argument, the court grants the motion and

adopts the following Order.

**I.   Background**

    As explained in further detail in this Court's prior Order

(Dkt. 74), Disney owns the copyrights to several well-known movies,

including *Coco*, *Beauty and the Beast*, *Star Wars: The Last Jedi*, and

*Black Panther*.  Disney distributes its films in physical formats, such as DVD and Blu-ray discs, as well as via streaming and digital download services.  Among Disney's product offerings are "Combo Packs," which contain a DVD and/or Blu-ray disc version of a particular Disney movie and a piece of paper containing an alphanumeric code (a "download Code" or "Code" ).  The Code can be inputted or redeemed at RedeemDigitalMovies.com or DisneyMoviesAnywhere.com ("Movies Anywhere") (collectively, the "redemption sites" or "download sites") to allow a user to stream and/or download the same Disney movie contained on the physical discs.

Defendant Redbox Automated Retail, LLC ("Redbox") rents and sells movies to consumers via automated kiosks that dispense DVD and Blu-ray discs.  Redbox has, for many years, purchased and disassembled Combo Packs, then rented or sold the physical discs therein to Redbox customers.  In late 2017, Redbox also began offering Combo Pack download Codes for individual sale at Redbox kiosks.

Soon after, Disney filed this suit and sought a preliminary injunction enjoining Redbox from offering standalone Disney Codes for sale.  Disney's Complaint alleged that Redbox's resale of Combo Pack Codes (1) constituted contributory copyright infringement (2) breached a contract Redbox enters into when it purchases Combo Packs, (3) interfered with Disney's contractual relations, and (4) violated California false advertising and unfair competition laws. This court denied Disney's motion for a preliminary injunction, concluding that, in light of the specific language printed upon Combo Pack boxes and used within the redemption sites' Terms of

1   Use, Disney could not show a likelihood of success on the merits of

2   its breach of contract or contributory copyright infringement

3   claims.

4       Disney subsequently changed the language on its Combo Pack

5   boxes, changed the download sites' Terms of Use, and amended its

6   Complaint.[1]  Disney's Combo Pack packaging for the movie *Black*

7   *Panther* is the first to reflect changes implemented after this

8   Court's denial of Disney's first motion for a preliminary

9   injunction.  The front of *Black Panther* Combo Pack boxes indicates

10  that the Combo Packs include a "Digital Code."  The back of the

11  boxes state, in some of the largest print displayed, "Digital Code

12  Included*[.]" The asterisk directs the reader to a discrete text

13  box at the bottom of the package, which states, in smaller, all-

14  capitalized text, "Digital code redemption requires prior

15  acceptance of licence terms and conditions.  Codes only for

16  personal use by recipient of this combination package or family

17  member.  Digital movie code . . . subject to expiration after May

18  15, 2023."  Smaller type in a more central, fine print-type

19  section of the packaging reads, "The digital code contained in this

20  package may not be sold separately and may be redeemed only by the

21  recipient of this combination package or a family member.  Visit

22  MoviesAnywhere.com, RedeemDigitalMovie.com, and

23  disneytermsofuse.com for code redemption and other applicable terms

24  and conditions."  The paper Code insert within the Combo Pack

25  contains a similar statement and also reads, "This digital code is

26  part of a combination package and may not be sold separately," and

27

28      [1] Disney does not concede that the changes were necessary.

1   "Digital code redemption is subject to prior acceptance of license

2   terms and conditions."

3        A visitor to RedeemDigitalMovie.com now sees a pop-up text box

4   stating,

5        All digital movie codes are owned by [Disney].  Digital
         codes originally packaged in a combination disc + code
6        packages (sic) may not be sold separately and may be
         redeemed only by an individual who obtains the code in the
7        original combination disc + code package . . . .  Digital
         codes are not authorized for redemption if sold separately.
8        You may use digital movie codes to obtain licensed access
         to digital movies only as specifically authorized under
9        these terms and conditions, the "Help" section of this
         website, the Disney Terms of Use, and the terms and
10       conditions of Movies Anywhere or any participating provider
         of digital content . . . .

11
    (Declaration of Kelly Klaus, Ex. B.)  The far lengthier Movies
12
    Anywhere Terms of Use state, within a "Copyright License Grant and
13
    Restriction" section, that "[t]he purchase of a license to stream
14
    or download any Movies Anywhere Content does not create an
15
    ownership interest in the licensed Content."  (Klaus Decl., Ex. D
16
    at 17.)  The terms of use further state that users will not "redeem
17
    an unauthorized . . . digital code," and "For combination packs: By
18
    redeeming a digital code . . . you are representing that you . . .
19
    obtained the code in an original . . . package and the code was not
20
    purchased separately.  Your representation is a condition of
21
    redemption . . . ."  (Id.)  Before a consumer can view digital
22
    content, he or she must enter a Code on a webpage that displays a
23
    similar message and requires the user to affirmatively click a
24
    "Redeem" button.  (Klaus Decl. Exs. B, C.)
25
         Disney's First Amended Complaint ("FAC") alleges a single
26
    cause of action against Redbox for contributory copyright
27
    infringement.  Disney now renews its motion for a preliminary
28

                                   4

injunction enjoining Redbox from selling Disney's download Codes.

## II.  Legal Standard

A private party seeking a preliminary injunction must show that: (i) it is likely to succeed on the merits; (ii) it will suffer irreparable harm in the absence of preliminary relief; (iii) the balancing of the equities between the parties that would result from the issuance or denial of the injunction tips in its favor; and (iv) an injunction will be in the public interest.  Winter v. Natural Resources Def. Council, 555 U.S. 7, 20 (2008).  Preliminary relief may be warranted where a party: (i) shows a combination of probable success on the merits and the possibility of irreparable harm; or (ii) raises serious questions on such matters and shows that the balance of hardships tips in favor of an injunction.  See Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."  Id.  Under both formulations, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury" absent the issuance of the requested injunctive relief.[2] Id.

## III. Discussion

A. Likelihood of Success on the Merits

i.  Contributory Copyright Infringement

---

[2]  Even under the "serious interests" sliding scale test, a plaintiff must satisfy the four Winter factors and demonstrate "that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

1    The FAC's sole cause of action alleges that Redbox customers
2  who purchase a Disney Code from Redbox violate Disney's copyright
3  when they redeem the Code because Redbox customers must first
4  represent, as a condition of obtaining a license to download and
5  reproduce content via the redemption sites, that they did not
6  obtain the Code separately from the Combo Pack.  Any such
7  representation by a Redbox customer, Disney alleges, is necessarily
8  false, resulting in an unauthorized download and copyright
9  infringement.  Disney alleges that Redbox is contributorily liable
10  for that infringement because it knows that customers will make
11  unauthorized downloads and contributes to those improper downloads
12  by selling Codes and instructing Redbox customers to redeem them.
13    As explained in this Court's prior Order, a copyright owner
14  has the exclusive right to reproduce the copyrighted work.  17
15  U.S.C. § 106.  "To establish copyright infringement, a plaintiff
16  must prove two elements: '(1) ownership of a valid copyright, and
17  (2) copying of constituent elements of the work that are
18  original.'"  L.A. Printex Indus., Inc.v. Aeropostale, Inc., 676
19  F.3d 841, 846 (9th Cir. 2012) (citing Feist Publ'ns, Inc. v. Rural
20  Tel. Serv. Co., 499 U.S. 340, 361, (1991)).  A defendant is
21  contributorily liable for copyright infringement if he has
22  "intentionally induced or encouraged direct infringement."  MDY
23  Indus., LLC v. Blizzard Entm't, Inc., 629 F.3d 928, 937 (9th Cir.
24  2010) (internal alterations and quotation marks omitted).  A
25  copyright licensee infringes upon a copyright if he exceeds the
26  scope of his license.  S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081,
27  1085 (9th Cir. 1989) ("To prevail on its claim of copyright
28  infringement, [the copyright owner] must prove . . . 'copying' of

1  protectable expression by [the accused infringer] beyond the scope
2  of [the] license.")

3      A restrictive license exists where the copyright owner "(1)
4  specifies that the user is granted a license; (2) significantly
5  restricts the user's ability to transfer the software; and (3)
6  imposes notable use restrictions." Vernor v. Autodesk, Inc., 621
7  F.3d 1102, 1111 (9th Cir. 2010). Here, there is no dispute that
8  the language on the redemption sites imposes significant use
9  restrictions and forbids the user from transferring copyrighted
10 movies. Redbox's primary contention, however, is that at the time
11 of sale, Disney does not adequately specify that it is granting the
12 purchaser only a limited license to view digital content, as
13 opposed to an unfettered ownership right to a digital copy.
14 (Opposition at 3.) Thus, Redbox argues, the subsequent, post-
15 purchase restrictions listed on the redemption sites are
16 unenforceable, and this case continues to turn on whether a
17 contract was formed at the point of sale. (Id.)

18     Disney responds that the redemption site license agreement is
19 "indisputably enforceable" because it is a "clickwrap" agreement
20 that requires affirmative assent. (Reply at 5.) As this Court has
21 explained, a valid contract requires capable, consenting parties, a
22 lawful object, and sufficient cause or consideration. Cal. Civ.
23 Code § 1550; Janda v. Madera Community Hosp., 16 F. Supp. 2d 1181,
24 1186 (E.D. Cal. 1998). In general, "silence or inaction does not
25 constitute acceptance of an offer." Norcia v. Samsung Telecomm.
26 Am., LLC, 845 F.3d 1279, 1284 (9th Cir. 2017) (quoting Golden Eagle
27 Ins. Co. v. Foremost Ins. Co., 20 Cal. App. 4th 1372, 1385 (1993).
28 Even a party that has accepted an offered benefit cannot be deemed

1   to have accepted a contract if the offeree did not have reasonable
2   notice that an offer had been made.  Id. (citing Windsor Mills,
3   Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 993 (1972)).
4   In Norcia, for example, the Ninth Circuit held that where product
5   packaging bore no indication that opening the box would constitute
6   acceptance of further terms set forth inside the box, a party could
7   not be deemed to have accepted those contract terms simply by
8   opening the box.  Id. at 1287.

9       A "clickwrap" agreement, in contrast, requires users to
10  affirmatively manifest assent to terms on a website or software
11  installation screen by, after being presented with the terms,
12  clicking on some version of an "I agree" button.  Nguyen v. Barnes
13  & Noble Inc., Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1176
14  (9th Cir. 2014).  Contrary to Disney's suggestion, however, the
15  mere existence of a clickwrap agreement does not render the terms
16  of such agreement "indisputably enforceable."  By Disney's logic,
17  the representations made at the point of sale would be immaterial,
18  even if Combo Pack boxes were totally blank "mystery boxes," so
19  long as purchasers later affirmatively agreed to a clickwrap
20  agreement restricting the use of digital content.  As an initial
21  matter, the situation here is not a classic clickwrap arrangement,
22  wherein a prospective customer must manifest assent.  See Savetsky
23  v. Pre-Paid Legal Servs., Inc., No. 14-03514 SC, 2015 WL 604767 at
24  *3 (N.D. Cal. Feb. 12, 2015).  Rather, the circumstances here are
25  somewhat more akin to the "money now, terms later" characteristics
26  of a "shrinkwrap" agreement, where notice of the existence of a
27  license agreement is provided on product packaging, the full terms
28  are contained within the package, and acceptance is demonstrated

1  not by purchase, but rather by post-purchase silence.[3]  Id.; See
2  also In re Facebook Biometric Info. Privacy Litig., 185 F. Supp. 3d
3  1155, 1165 (N.D. Cal. 2016)(characterizing clickwrap and
4  "browsewrap" agreements as opposite ends of a spectrum of assent).[4]

5       Furthermore, although Disney is correct that courts often find
6  clickwrap agreements enforceable, there is "no per se rule of
7  validity or invalidity . . . ."  In re Facebook, 185 F.Supp.3d at
8  1165.  The other authorities cited by Disney do not suggest
9  otherwise.  In Tompkins v. 23andMe, Inc., for example, the Ninth
10  Circuit did enforce an arbitration clause contained in a post-
11  purchase clickwrap agreement.  Tompkins v. 23andMe, Inc., 840 F.3d
12  1016, 1021 (9th Cir. 2016).  The court's decision, however, had
13  nothing to do with assent or adequacy of notice, but rather turned
14  on the lack of substantive unconscionability.  Id. at 1024.
15  Indeed, the district court found the provision in question
16  procedurally unconscionable, in part because the clickwrap terms
17  provided only "minimal" notice of the provision, were displayed
18  only after purchase, and may not have been accompanied by a right
19  to reject the terms and receive a full refund.[5]  Tompkins v.

20

21       [3] In Vernor v. Autodesk, Inc., 621 F.3d 1102, 1104 (9th Cir.
22  2010), disputed license terms were presented both on-screen during
   software installation and on physical packaging.  Vernor, 621 F.3d
23  at 1105.
       [4] "Browsewrap" refers to terms of use that are mentioned on a
24  website but posted in full on a separate webpage accessible via
   hyperlink.  In re Facebook, 185 F.Supp.3d at 1165.  Like a
25  shrinkwrap agreement, a browsewrap agreement does not require
   affirmative assent, and considers continued use of a website, like
26  continued use of a shrinkwrapped product, as assent to the terms of
   use.  Id.; See also Savetsky, 2015 WL 604767 at * 3 (arranging
27  clickwrap, shrinkwrap, and browsewrap agreements on a spectrum of
   most to least affirmative manifestations of assent.)
28       [5] Redbox has not asserted an unconscionability defense in
   response to Disney's motion for a preliminary injunction.

23andMe, Inc., No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *15 (N.D. Cal. June 25, 2014).  The district court further observed that whether a customer agreed to the terms had nothing to do with whether the terms were enforceable.  Id.; See also McLellan v. Fitbit, Inc., No. 3:16-CV-00036-JD, 2018 WL 1913832 (N.D. Cal. Jan. 24, 2018) (distinguishing questions of contract formation and contract validity).  As the Ninth Circuit noted, the defendant did not appeal the district court's finding that the clickwrap provision at issue was  procedurally unconscionable.  Tompkins, 840 F.3d at 1024 n.2.

Thus, notwithstanding the existence of clickwrap agreements on the redemption sites, the court's analysis of whether the terms of those agreements are likely enforceable cannot be entirely divorced from consideration of the Combo Pack packaging's disclosures.  That analysis is complicated to some degree because both parties' arguments about the existence of a restrictive license suffer from imprecision regarding the particular language at issue.  Disney bases its arguments on the *Black Panther* packaging language, even though the packaging of other movies named in the FAC differed significantly, as discussed in this Court's prior Order.  Redbox's Opposition largely cites examples of language from packaging predating this Court's prior Order and Disney's *Black Panther* revisions.  Having discussed this disconnect at oral argument, and having afforded Redbox the opportunity to file supplemental briefing regarding the *Black Panther* disclosures, the court limits

10

1  its consideration to the revised language present on the *Black*

2  *Panther* Combo Packs.[6]

3      Taking that language into consideration, the court concludes

4  that Disney has shown that it is likely to succeed on the merits of

5  its contributory infringement claim.  At argument, Redbox contended

6  that it can only be liable for contributory infringement if it had

7  the subjective intent to be a contributory infringer.  Redbox is

8  incorrect.  See Louis Vuitton Malletier, S.A. v. Akanoc Sols.,

9  Inc., 658 F.3d 936, 943 (9th Cir. 2011) (citing A & M Records, Inc.

10 v. Napster, 239 F.3d 1004, 1020 (9th Cir.2001) ("Contributory

11 liability requires that the secondary infringer 'know or have

12 reason to know' of direct infringement.")).  It is undisputed that

13 Redbox has actual knowledge of the redemption sites' clickwrap

14 terms, which do appear to create a restrictive license.  Both sites

15 specify that the user is only granted a license rather than

16 ownership.  The RedeemDigitalMovie.com terms state, "You may use

17 digital movie codes to obtain licensed access to digital movies

18 only as specifically authorized . . .[,]" and the Movies Anywhere

19 terms refer to a "Copyright License Grant" and state that "[t]he

20 purchase of a license to stream or download any Movies Anywhere

21 Content does not create an ownership interest in the licensed

22 Content."  These and other terms restrict downloaders' use or

23 transfer of the digital content.  See Vernor, 621 F.3d at 1111.

24

25     [6] Disney's Request to Strike Portions of Redbox's Supplemental
26 Opposition is GRANTED, in part.  The court has not considered those
   portions of the supplemental opposition that exceed the scope of
27 the court's leave and discuss topics other than the *Black Panther*
   packaging.  The passages identified by Disney, however, are
28 overbroad.  Exhibit I to the Supplemental Geibelson Declaration,
   for example, is referenced on the *Black Panther* box.

It is also undisputed that Redbox knows that customers who purchase standalone Disney Codes from Redbox kiosks do in fact proceed to violate the clickwrap terms and redeem the Codes. Indeed, Redbox affirmatively instructs its customers to visit the redemption sites, "[e]nter the digital movie code . . .," and "[f]ollow the on-screen prompts and enjoy the show!"  (Klaus Decl., Ex Z.)

If, however, the clickwrap terms are unenforceable, downloaders do not directly infringe upon Disney's copyright by violating those terms, and Redbox's actual knowledge will not be sufficient to render Redbox liable for contributory copyright infringement.  Redbox therefore argues that, notwithstanding the revised terms displayed on the *Black Panther* packaging, Combo Pack purchasers obtain an ownership interest in a digital download, and not merely a limited license to access or view digital content. This argument is not persuasive.  Redbox's argument fails, in large part, because it attempts to characterize the *Black Panther* language as a deficient "boxtop" license agreement.  As this Court has explained, the Ninth Circuit analyzed a purported boxtop agreement, where all license terms are printed on the outside of a product package, in Arizona Cartridge Remanufacturers Association, Inc. v. Lexmark International, Inc., 421 F.3d 981 (9th Cir. 2005). The Lexmark court held that a party did assent to a license by opening a package that read,

> Please read before opening. Opening of this package or
> using the patented cartridge inside confirms your
> acceptance of the following license agreement. The patented
> cartridge is sold at a special price subject to a
> restriction that it may be used only once. Following this
> initial use, you agree to return the empty cartridge only
> to Lexmark for remanufacturing and recycling. If you don't

1    accept these terms, return the unopened package to your
2    point of purchase. A regular price cartridge without these
     terms is available.

3    Id. at 983-984.  The court explained that the contract was

4    enforceable because, by its own terms, it gave notice of the

5    existence of a license, set forth the conditions of sale of that

6    license, afforded the consumer the opportunity to read the terms of

7    the contract before deciding whether to accept them, and provided

8    consideration in the form of a reduced price, thus supporting the

9    conclusion that a consumer who opened the box accepted the terms

10   printed upon it.  Id. at 987-88.

11       In its first motion for a preliminary injunction, Disney did

12   argue that earlier versions of Combo Pack boxes, which stated only

13   that "Codes are not for sale or transfer[,]" were analogous to the

14   packaging in Lexmark, and that Redbox agreed to later-disclosed

15   license conditions simply by opening Combo Packs.  This Court

16   rejected that argument, concluded that Disney's packaging was

17   insufficient to create either a boxtop or shrinkwrap license, and

18   denied Disney an injunction.  Notably, however, Disney's instant

19   motion does not contend that even the revised Black Panther box,

20   with its more thorough language, constitutes a boxtop license.

21   Although, as discussed above, the court also disagrees with

22   Disney's current position that only the redemption site language is

23   relevant, the pertinent question is whether Disney can likely show

24   that Combo Pack purchasers obtained a restrictive digital license

25   rather than an ownership right.

26       As discussed above, the circumstances here bear

27   characteristics of shrinkwrap and clickwrap agreements.  See

28   Savetsky, 2015 WL 604767 at * 3; In re Facebook, 185 F.Supp.3d at

                                   13

1165.   Prospective Combo Pack purchasers are presented with relatively visible language stating, "Digital code redemption requires prior acceptance of licence terms and conditions.  Codes only for personal use by recipient of this combination package or family member.  Digital movie code . . . subject to expiration after May 15, 2023."   Prospective purchasers are also informed, albeit in smaller type, that "applicable terms and conditions" can be found at the redemption sites.  Those terms can be viewed on the sites even prior to purchase.  Post-purchase, the redemption sites present the terms and require an affirmative manifestation of assent in the form of a button click.

Furthermore, although not explicitly set forth on either the *Black Panther* packaging or the redemption sites, Plaintiff represented to the court at oral argument that purchasers who do not accept the terms of the digital license may return Combo Packs to the retailer.[7]  Such a right to return is critically important.[8]

_____

[7] Plaintiff further represented at argument that whether a customer's return to a retailer is recognized as a valid return is an issue between the retailer and Disney, not the purchaser.

[8] The record does cast some doubt upon the accuracy of Plaintiff's claim.  Neither the RedeemDigitalMovies.com nor Movies Anywhere clickwrap makes any mention of a right to return.  Furthermore, the latter contains an integration clause stating that the Terms of Use, which do not mention a right of return, constitute the entire agreement with Code redeemers.  (Klaus Decl., Ex. D § 9(q).)  In addition, disneytermsofuse.com, referenced on the *Black Panther* box, contains a subsection regarding "return of goods," albeit in connection with "physical goods," which may or may not apply to Codes or Code-containing Combo Packs, that states that purchasers do <u>not</u> have the right to return unsealed physical media such as video recordings and DVDs.  (Supplemental Geibelson Decl., Ex. I § 4.)   For purposes of this motion, the court takes at face value Plaintiff's representation that Combo Pack purchasers do have the right to return.  Given the lack of clarity regarding the issue, however, the injunctive relief ordered herein shall terminate after ninety days, absent a showing by Disney that it has clearly and prominently indicated that purchasers who wish to

(continued...)

14

1   A person who has paid money for a product, subject to later-

2   disclosed licensing terms, cannot possibly be considered to have

3   meaningfully assented to those terms if he or she never had the

4   opportunity to reject the terms by returning the product for a

5   refund.  Cf. Lexmark, 421 F.3d at 984, 988 (finding valid boxtop

6   contract where terms explicitly instructed purchaser to return item

7   to point of purchase if the purchaser rejected post-sale terms);

8   See also ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1452 (7th Cir.

9   1996) (holding, in a shrinkwrap case, that "[a]ny buyer finding

10  [unacceptable post-sale license terms] can prevent formation of the

11  contract by returning the package, as can any consumer who

12  concludes that the terms of the license make the software worth

13  less than the purchase price.").

14      At this stage, the court need not make a determination whether

15  Combo Pack purchasers enter into a shrinkwrap, clickwrap, or other

16  type of agreement, nor precisely delineate the terms of any such

17  agreement.  It appears from the record currently before the court

18  that neither Redbox nor any other Combo Pack purchaser could (or

19  did) reasonably believe that, notwithstanding the *Black Panther*

20  licensing language on the box itself, the Combo Pack included

21  unrestricted ownership rights to any digital content.  See Vernor,

22  621 F.3d at 1112 (holding that licensee who did not receive title

23  to software could not pass ownership to others).  Because Redbox

24  did not obtain an ownership right to any digital content when it

25  purchased Combo Packs, Disney has adequately shown that it is

27      [8](...continued)

28  reject license terms disclosed after purchase may, with reasonable
    restrictions, return Codes or Combo Packs for a refund.

1   likely to succeed on its claim that Redbox encouraged Redbox

2   customers to infringe Disney's copyrights by redeeming Codes in

3   violation of the license terms set forth on the redemption sites.

4             ii.   Defenses

5        As it did in response to Disney's first motion for a

6   preliminary injunction, Redbox raises defenses of copyright misuse

7   and the first sale doctrine.  As this Court explained, the first

8   sale doctrine allows the "owner of a particular copy or phonorecord

9   lawfully made under [the Copyright Act] . . . to sell or otherwise

10  dispose of the possession of that copy or phonorecord," without the

11  permission of the copyright holder.  UMG v. Augusto, 628 F.3d 1175,

12  1180 (9th Cir. 2011) (quoting 17 U.S.C. § 109(a)); Bobbs-Merrill

13  Co. v. Strauss, 210 U.S. 339, 341 (1908).  This court concluded

14  that because no particular fixed copy of a copyrighted work yet

15  exists at the time Redbox purchases or sells a Code, the first sale

16  doctrine is inapplicable to this case.

17       Nevertheless, Redbox again raises the first sale defense,

18  relying upon new expert testimony and arguing that Plaintiff

19  misrepresented the nature of its server technology.  (Opp. at 16.)

20  Even accepting Redbox's expert's testimony at face value, however,

21  the court's analysis is unchanged.  Redbox's expert opines that

22  when a consumer redeems a Code, Disney must create a discrete

23  digital copy of the content in a particular user's virtual, cloud-

24  based "locker."  (Declaration of Seth Nielson ¶ 6.2.)  At argument,

25  however, Redbox conceded that even if such a "particular copy"

26  exists on Disney's servers, the user's computer would have

27  "ultimately the same albeit a second copy," or "another copy" of

28  the user's discrete copy.  These inherent contradictions illustrate

16

that the circumstances here do not involve a single, discrete, particular copy to which the first sale doctrine could apply. See Capitol Records, LLC v. ReDigi Inc., 934 F. Supp. 2d 640 (S.D.N.Y. 2013)

Redbox also argues that Disney's changes to the redemption sites' terms of use do not cure Disney's prior copyright misuse. Copyright misuse is an affirmative defense that "prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly," and extends to any situation implicating "the public policy embodied in the grant of a copyright." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir. 2001); Omega S.A. v. Costco Wholesale Corporation, 776 F.3d 699-700 (9th Cir. 2015)(Wardlaw, J. concurring). At the time of Disney's first motion, the redemption sites' terms of use required downloaders to affirm that they currently possessed the physical DVD and Blu-ray discs that, along with the Code, constitute a Combo Pack. This Court concluded that such a restriction improperly intrudes upon a purchaser's right, secured by the first sale doctrine and 17 U.S.C. § 109(a), to dispose of physical DVDs and Blu-ray discs as he or she sees fit. This Court concluded that such an attempt to leverage copyright in digital content to control downstream distribution of physical discs constituted copyright misuse.

As set forth above, however, Disney has now changed the terms of use on the redemption sites. Downloaders no longer need affirm that they possess the physical discs, to which first sale rights would apply. Instead, RedeemDigitalMovie.com now states that Codes may not be sold separately and may only be redeemed "by an

17

individual who obtains the code" in a Combo Pack.  Movies Anywhere
states, "For combination packs: By redeeming a digital code . . .
you are representing that you . . . obtained the code in an
original . . . package and the code was not purchased separately.
Your representation is a condition of redemption . . . ."  These
revised terms do not encroach upon disc owners' alienation rights
or improperly expand Disney's power beyond the sphere of copyright.
Under the revised terms, Combo Pack purchasers and recipients
continue to enjoy digital access regardless whether they keep or
dispose of the physical discs.

Redbox contends that such terms nevertheless continue to
constitute misuse because "the digital code is rendered worthless"
unless a Combo Pack owner foregoes the first sale rights associated
with the physical discs.  (Opp. at 12.)  That statement is not
accurate.  Under the old terms, a Combo Pack owner who disposed of
the discs was indeed left with a worthless code because continued
possession of the discs was a condition of digital access.  Now,
however, digital access is conditioned not on possession of the
discs, but on the manner of Code acquisition.  A Combo Pack owner
who disposes of the discs is left with the same digital access
rights he or she always possessed.  Although Redbox is correct
that, because Codes are not separately transferable, a Combo Pack
owner cannot transfer a Code if he or she disposes of the discs
first, the right to transfer a separate Code is not protected by
the first sale doctrine or any unconditional ownership rights, as
discussed above.  A copyright misuse defense, therefore, is
unlikely to succeed.

B.   Remaining Factors

18

1    A party seeking a preliminary injunction must also show that

2  it will suffer irreparable harm in the absence of an injunction.

3  Winter, 555 U.S. at 20.  Disney has presented extensive evidence

4  that Redbox's Code sales are damaging Disney's relationships with

5  its licensees.  This evidence is sufficient to warrant injunctive

6  relief.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240

7  F.3d 832, 841 (9th Cir. 2001); Rent-A-Ctr., Inc. v. Canyon

8  Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir.

9  1991).  Redbox does not identify any compelling interests that

10  would tilt the balance of equities in its favor, notwithstanding

11  its infringing activities and the attendant irreparable harm to

12  Disney.[9]  Disney has also adequately shown that an injunction

13  protecting its copyright would be in the public interest.[10]  See

14  Disney Enterprises, Inc. v. VidAngel, Inc., 869 F.3d 848, 867 (9th

15  Cir. 2017)

16    Redbox's Supplemental Opposition argues that, if the court's

17  consideration is limited to the *Black Panther* language, there is no

18  irreparable harm, and indeed no ripe case or controversy, because

19  Redbox has not sold *Black Panther* Codes and has no intention of

20  doing so.[11]  (Supplemental Declaration of Michael Chamberlain ¶ 4;

21  Supplemental Opposition at 1-2.)) Although there appears to be no

22  dispute that Redbox is not selling *Black Panther* Codes, Redbox's

23  motivations are unknown to the court.  In light of Redbox's

24  position on the instant motion, it is clear that Redbox does not

25

26    [9] Redbox makes only passing reference to equities in the
introduction to its Opposition, and does not discuss the equities
27  in the body of its memorandum.
    [10] Redbox's Opposition does not address this factor.
28    [11] Redbox repeated this representation at oral argument.

concede that it cannot sell *Black Panther* codes without contributorily infringing upon Disney's copyrights.  Whatever Redbox's motive, "[u]nder the voluntary cessation exception [to the mootness doctrine], a defendant's decision to stop a challenged practice generally does not deprive a federal court of its power to determine the legality of the practice." Akina v. Hawaii, 835 F.3d 1003, 1010 (9th Cir. 2016) (per curiam) (internal quotation marks omitted).  "[A]n action for an injunction does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendant[]s would be free to return to their old ways." F.T.C. v. Affordable Media, 179 F.3d 1228, 1237 (9th Cir. 1999) (internal quotations and alterations omitted).  Absent injunctive relief, it seems quite possible that Redbox would begin selling *Black Panther* Codes alongside all of the other Disney Codes Redbox already sells.  Redbox's voluntary decision not to sell certain Codes up to this point in time does not demonstrate a lack of irreparable harm.

**IV.  Conclusion**

For the reasons stated above, Disney's Motion for Preliminary Injunction is GRANTED.  Redbox and all of its officers, directors, agents, servants, and employees, and all persons in active concert or participation or in privity with any of them, ARE HEREBY RESTRAINED AND ENJOINED from:

(1) selling or otherwise transferring Plaintiffs' standalone Codes originally included within Combo Packs bearing license terms identical or substantially similar to those displayed upon Plaintiffs' *Black Panther* Combo Pack packaging;

1       (2) inducing, encouraging, or contributing to the infringement

2           of Plaintiffs' exclusive rights under the Copyright Act,

3           17 U.S.C. § 106; and

4       (3) inducing, encouraging, or contributing to its customers'

5           infringement of Plaintiffs' copyrighted works.

6     The Court orders Plaintiffs to post security, within 7 days of

7 the date of this Order, in the amount of $100,000 to compensate

8 Redbox for its losses in the event this injunction is reversed or

9 vacated.

10     This injunction shall expire ninety days after the date of its

11 issuance, absent a showing by Disney that it clearly and

12 prominently indicates, on physical packaging and/or online, that

13 Combo Pack purchasers who do not agree to later-disclosed digital

14 license terms may, with reasonable restrictions, return Codes or

15 Combo Packs for a refund.

16

17

18 IT IS SO ORDERED.

19

20 Dated: August 29, 2018

21                      DEAN D. PREGERSON
                      United States District Judge

22

23

24

25

26

27

28